**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NICOLE BROCKMOLE and LAUREN
BAIR, on behalf of themselves and all others
similarly situated,

       Plaintiffs,

 v.

EZ FESTIVALS LLC, AVANT GARDNER
LLC, MADE EVENT LLC, JOHN DOES
NO. 1-10 and JURGEN BILDSTEIN,

       Defendants.

Civil Action No.: 1:23-cv-08106

**PROPOSED AMENDED CLASS ACTION**
**COMPLAINT**

**JURY TRIAL DEMANDED**

   Plaintiffs Nicole Brockmole and Lauren Bair, individually and as class representatives, as

and for their claims against the Defendants named herein in this Amended Class Action

Complaint allege the following upon information and belief as to themselves and upon

information and belief as to all other allegations based upon the investigation on their counsel.

Plaintiffs anticipate that substantial additional evidence in support of these allegations will be

adduced through discovery.

## I.   NATURE OF THE ACTION

   1.   Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all affected

persons to seek a refund of monies paid for admission to all events at venues owned and/or

operated by defendants at Avant Gardner in Brooklyn and/or to the 2023 Electric Zoo New York

Music Festival ("EZNY 23") from October 28, 2019 to the present. Plaintiffs and class members

bought tickets to events and were: (i) denied entry, or (ii) not treated to shows as advertised or

(iii) were sold tickets to events that had over sold them subject to unsafe conditions caused by

overselling tickets to events capacity which therefore did not give buyers the benefit of their

bargain. Buying a ticket to an oversold event is at best "stand by" ticket which does not assure entry. Consistent with Defendants' usual course of business, on Friday, September 1, 2023, Saturday, September 2, 2023, and/or Sunday, September 3, 2023, thousands of persons who paid a minimum of $160 for a one day pass to EZ NY 23 were denied entry and/or were not provided with shows as advertised.  Illustrating the connections of all Defendants' music activities is the actions of certain Defendants' to promote to class members the sale of after party tickets for the weekend of September 1, 2023 to shows at other Defendants' Brooklyn Avant Gardner venue owned and managed by yet other Defendants in conjunction with the promotion and sale of tickets to EZ NY 23.

2.      Like similar occasions at Avant Gardner where paying patrons were denied access or forced to evacuate due to sales of tickets in excess of permitted capacity, EZNY 23 abruptly canceled its entire first day of shows on Friday, September 1, 2023 with little to no notice to ticket holders after they arrived in New York City. On September 2, 2033 EZNY 23 failed to provide the show as offered and on September 3, 2023, EZNY 23 failed to allow access to over 7000 ticket holders and failed to provide the show as advertised.

3.      Defendants intentionally delayed announcement of EZNY 23 cancellation to continue to sell "after party" tickets. Defendants also heavily promoted EZNY 23 "after parties," at Avant Gardner. The enterprise set up the EZNY 23 shows to funnel EZNY 23 concert goers to the Avant Gardner "after parties" after each day's EZNY 23 shows.

4.      As reported by online media outlet Gothamist, "[t]he event's [EZNY 23] organizers are the same people behind Avant Gardner, an 8,000-person music complex in East

Williamsburg that has a history of overselling shows by as much as 33%, according to reports from an independent monitor obtained by Gothamist."[1]

5.      The Defendants are all interrelated through the various companies and business arrangements between and among each other alleged herein.  Alleged herein at the top of the mountain of defendants are two individual defendants, Jurgen Bildstein ("Bildstein") and Phillip W. Wiederkehr ("Wiederkehr"), who directly and/or indirectly own all of the entity defendants.

6.      Plaintiffs allege that the defendants operate as an enterprise whose membership operates music events, venues, and music festivals (as of June 2022), when defendant Avant Gardner acquired the Electric Zoo music festival and folded it into the portfolio of defendants' companies. Plaintiffs allege that the defendants constitute an "enterprise" under RICO. The enterprises operations conducted by, owned by and/or financed by, Defendants.  The operations include concert promotion, music events, and dance clubs in New York City. The manner in which they conduct these operations violate numerous laws including the money laundering statutes, mail and wire fraud statutes. The foregoing constitute predicate racketeering acts under RICO. The enterprise conducts its operations through and by fraudulent means including materially false and misleading advertisements, websites, emails, ticket sales, and other communications through which Defendants invite Plaintiffs and class members to pay Defendants for admission to events and venues operated by Defendants which are oversold beyond their permitted capacity, and/or fail to provide events as advertised.

7.      Defendants are engaged in a pattern under RICO of operating in the illegal manner described above which fraudulently induces Plaintiff and class members to pay monies

---

[1]      *See* https://gothamist.com/news/avant-gardner-owners-were-behind-electric-zoo-fiasco-mayor-adams-promises-response

to Defendants and/or which injures Plaintiffs and the class members in depriving them of the benefit of event and venues for which they paid.

## II.      PARTIES

### A.      Plaintiffs

8.      Plaintiff Nicole Brockmole is an adult residing in Cary, North Carolina who purchased tickets for Electric Zoo for Friday, September 1, 2023 and Sunday, September 3, 2023 and attempted to attend both shows but due to Defendants actions did not.

9.      Plaintiff Lauren Bair is an adult residing in Fountain Hills, Arizona who purchased tickets for Electric Zoo for Friday, September 1, 2023 but could not because the show was cancelled.

### B.      The "Music Event Defendants"

10.      Defendant Avant Gardner, LLC ("Avant Gardner") is a New York Limited Liability Company located at 140 Stewart Avenue, Brooklyn, NY, United States, 11237 and is an owner, operator, organizer, promoter of Electric Zoo Music Festival. Avant Gardner LLC does business under its registered "assumed names" "Garden Bar," "The Lost Circus," "Ruin Bars," "The Kings Hall" and  "The Brooklyn Mirage" located at 140 Stewart Avenue, Brooklyn, New York 11237. The Mirage is the outdoor summer season portion of Avant Gardner. The capacity of the outdoor portion is 6,000 people. The entire AG complex is 80,000 square feet of which the outdoor 12,000 square feet.

11.      According to the website https://webdevoi.manufaktur.com/, Avant Gardner's parent company is WRE US Holding Company whose parent company is WRE Holding AG whose parent company is Defendant Wiederkehr Associates AG ("WAAG").

12.     According to NYPD Chief of Patrol John Schell, Defendants Avant Gardner and Bildstein were the operators of EZNY 23.

13.     Defendant Made Event LLC ("ME, LLC") is a Foreign Limited Liability Company formed in May 2022 just as the Zoo Festival was acquired by Avant Gardner.  It is located at 140 Stewart Avenue, Brooklyn, NY, United States, 11237 and is an owner, operator, organizer, promoter of Electric Zoo Music Festival.

14.     Defendant EZ Festivals LLC ("EZ Festivals") is a Foreign Limited Liability Company formed in Delaware and in April 2022, it registered with the New York Department of State NYS DOS. Its registered business address is 140 Stewart Avenue, Brooklyn, NY, United States, 11237, and it is an owner, operator, organizer, promoter of Electric Zoo Music Festival. Avant Gardner acquired the predecessor to Made Event and Electric Zoo from LiveStyle for $15,000,000 in June 2022.

15.     Defendant CityFox is a concert promotion company owned by CityFox Experience a Swiss organized entertainment company that is part of the music label CityFox and produces and promotes events at AG. CityFox was granted a short liquor license in 2017 for Avant Gardner.

16.     Defendant Reynard Productions ("Reynard" is French for "fox") is an events company formed by Bildstein in 2017, it produced EZNY 23.

17.     Defendant Jurgen Bildstein ("JB") is a natural person residing in New York who owns and/or controls Avant Gardner, ME LLC and EZ Festivals. He founded Avant Gardner with Wiederkehr in 2017 and is co-founder of CityFox and the creative director of CityFox and Reynard Productions.

C.    **The Real Estate Defendants**

18.    Defendant Phillip Wiederkehr ("Wiederkehr") is a natural person who is a co-owner and founder of AG and an indirect owner and operator of the real property which Avant Gardner occupies in Brooklyn. Wiederkehr founded Avant Gardner with Bildstein in 2017. Wiederkehr operates a private equity and asset management firm whose investors are believed to be DOES 1-10.

19.    Defendant AGDP Holding Inc. ("AGDP") is a New York corporation and is listed as an owner or lessee of the premises located at 140 Steward Avenue, Brooklyn, New York. Bildstein is named CEO of AGDP in NYS records.

20.    Defendant Gardner Purchaser LLC is a Foreign Limited Liability Company formed in Delaware and is listed on SLA documents as "landlord" to AGDP Holding Inc.

21.    Defendant Wiederkehr Associates is an entity which owns and/or operates Wiederkehr and its investors real estate holdings and is believed to be the assumed name for defendant Wiederkehr Real Estate AG, a property manager.

22.    Defendant Stewart Purchaser LLC is a New York limited liability company which is listed on SLA documents as the "landlord" to AGDP Holding Inc.

D.    **The Investor Defendants**

23.    Defendants WRE Parent US Holding Corp. Inc. ("WRE Parent") and WRE Management LLC ("WRE Mgmt.") (a New York Limited Liability Company whose address is listed as 97-77 Queens Boulevard, Suite 620, Rego Park, New York) are entities owned in whole or in part by Defendant Phillip Wiederkehr. "WRE" is believed to be an acronym for "Wiederkehr Real Estate" formed by Wiederkehr. WRE Mgmt. and Wiederkehr Real Estate AG manages the property upon which AG operates.

24.     Defendant WRE Holding AG is a Swiss entity which is the owner and operator of WRE Parent.

25.     Defendants DOES 1-10 are members of the "investment group" reported to have provided the $15 million for Avant Gardner to acquire Zoo Festival.

### III.     JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction pursuant to the RICO statutes, 18 U.S.C. 1965 (a)-(d), and/or the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

27.     Venue is proper in this Court pursuant to 18 U.S.C. 1965 (a)-(d), 28 U.S.C. §1391, because this is the judicial district in which defendants reside or conduct business and where a substantial part of the events giving rise to the claims asserted herein occurred.

28.     This Court has personal jurisdiction over this matter because Defendants are present and/or regularly conduct business operations in this District.

### IV.     SUBSTANTIVE ALLEGATIONS

**A.     Avant Gardner Has A Documented
History Of Selling Tickets Beyond Permitted Capacity**

29.     Defendant Wiederkehr Real Estate A.G. bought the buildings now occupied by Avant Gardner in 2016.  At that time, Bildstein and Wiederkehr set up Avant Gardner to rent the properties from WRE AG. WRE AG provided Avant Gardner with a "Tenant Improvement Allowance" to transform the space into the Avant Gardner entertainment complex. Phillip Wiederkehr was quoted in VICE:  "the investors wanted to diversify and they liked the

economics of the entertainment business." (April 11, 2017 by Anna Cordero-Rado and Will Caiger-Smith).  Unknown investors are named herein as Does 1-10.

30.    Avant Gardner became an 80,000 square foot site that includes The "Brooklyn Mirage," "The Great Hall," "The King's Hall" and "The Last Circus." The "Brooklyn Mirage" is the outdoor portion of the venue.

31.    Avant Gardner has a license to sell liquor at 140 Stewart Avenue, Brooklyn, New York issued by the New York State Liquor Authority ("SLA").

32.    Avant Gardner has a documented history of overselling events at its venues as demonstrated by ticket sales data which shows Avant sold 3700 tickets to a January 9, 2022 show which was 33% higher than the "Great Hall's" maximum occupancy. On February 4, 2022, it sold 23% more tickets than maximum capacity and on February 18, 2022 sold 30% more tickets than maximum capacity.

33.    The sale of tickets to events beyond permitted capacity constitutes fraud on several levels and such sale by wire (internet) constitutes wire fraud.

34.    Eventually, Avant Gardner's operations were investigated by the SLA and administrative charges were lodged. As a result of the administrative charges brought by the SLA against Avant, on October 13, 2021, as part of a conditional no contest plea agreement, SLA issued a civil penalty against Avant Gardner, and requiring Avant Gardner, *inter alia*, to hire a "monitor."

35.    Avant Gardner was given a list of monitors by SLA and Avant Gardner chose T&M USA, LLC ("T&M") as its monitor.

36.    T&M and Avant Gardner entered into an Independent Monitor Agreement dated November 9, 2021, pursuant to which Avant Gardner retained "T&M to act as an

Independent Monitor, conducting audits, inspections and observations of operations at the Client-owned concert and multi-purpose event venue . . . to determine if operations at the Site are in compliance with applicable regulatory requirements and industry best practices."

37.     As required by the SLA Order, T&M provided, among other things, monitoring, auditing, and reporting services to Avant Gardner, and Avant Gardner accepted those services at first.

38.     As required by the SLA Order, T&M prepared and submitted a first quarter report (2022) to the SLA.

39.     On March 30, 2022, at the conclusion of the 3-month trial period, and after a request by Avant Gardner that the SLA reconsider the need for the monitor, the SLA commended T&M on its first quarter report and directed that T&M continue to act as Avant Gardner's monitor for the remainder of the one-year period required by the SLA Order.

40.     The start of the second quarter of 2022 coincided with the opening of the outdoor portion of Avant Gardner, The Mirage. This had the effect of increasing the size of crowds threefold at AG.

41.     Consequently, T&M observed and reported the lack of meaningful safeguards by the security staff and Avant Gardner management to prevent overcrowding.

42.     Because Avant Gardner feared that T&M's continued monitoring and reporting would result in a permanent revocation of its liquor and other operating licenses, Avant Gardner fired T&M without consulting the SLA.

43.     The Music Event Defendants' and Real Estate Defendants' management, operation, control, use, maintenance and/or leasing or ownership of Avant Gardner.

**B.      The Music Event Defendants Caused Avant Gardner To Apply
Its Overselling Practices and Wire Fraud Promotions To EZNY 23**

44.      For more than a decade, Electric Zoo has been a Labor Day weekend tradition in New York City.  It is one of the City's biggest music festivals touting top talent in the electronic Dance Music ("EDM") genre year after year.

45.      The Electric Zoo Music Festival occupies the fields of NYC's Randall's Park for 3 days of EDM music for fans from all over the world and remains the main EDM event in NYC.

46.      Like years past, Electric Zoo in 2023 was scheduled to host an estimated 40,000 people for each day of the festival on Randall's Island, New York over Labor Day Weekend between Friday, September 1, 2023 and Sunday, September 3, 2023. Like past years, the festival required numerous city permits well in advance of opening day.

47.      The New York City Department of Parks and Recreation would not issue the permits needed for EZ 2023. Defendant knew this well in advance but failed to disclose these facts and continued to promote the EZNY 23 as a weekend long three day festival over the internet.

48.      The Electric Zoo festival became part of the RICO enterprise when Defendants acquired it in 2022 and ran it in conjunction with Avant Gardner and formulated and implemented cross selling opportunities of "after party" events at Avant Gardner after EZNY 23 each night of the festival.

49.      The Music Event Defendants caused The Electric Zoo to oversell tickets beyond capacity and funnel people into buying tickets for "after-parties" held at Avant Gardner to events, such as "The Convergence," "The Mega Mirage," "The Secret Garden," The Landing," and "Morphosis" on Friday, Saturday and Sunday, September 1-3, 2023.

50.     On the same internet pages falsely promoting EZ 2023 as a three day music festival, The Mustic Event Defendants promoted their "after-party" offerings at Avant Gardner to EZ 2023 ticket buyers.

51.     Shortly before Electric Zoo was scheduled to begin its first day, and after many, if not all, concert goers arrived in New York City to attend, "Electric Zoo" wrote in an Instagram post Friday morning:  "The global supply chain disruptions have impacted industries worldwide, and, sadly, our beloved festival has not been immune. These unexpected delays have prevented us from completing the construction of the main stage in time for Day 1."

52.     The post stated:[2]



Dear Electric Zoo Family,

It is with a broken heart that we deeply regret to inform you that, despite our tireless efforts and round-the-clock commitment, we have made the painful decision to cancel the first day of Electric Zoo.

This year has presented unparalleled challenges for everyone. The global supply chain disruptions have impacted industries worldwide, and, sadly, our beloved festival has not been immune. These unexpected delays have prevented us from completing the construction of the main stage in time for Day 1.

We know how much today meant to all of you, and seeing your excitement made it all the more special for us. Sharing this tough news is honestly heartbreaking. We feel the

---

[2]     *See* https://www.instagram.com/p/Cwp4ggLu_rL/

weight of the disappointment and frustration, and we're so sorry to let our Electric Zoo family down.

We will be providing a full refund for your Friday ticket. For those who hold multiple-day tickets, you will receive credit for one of the days. Similarly, all Friday ferry and bus ticket holders will receive a full refund, and those with multiple-day transport tickets will receive a refund equivalent to the amount of one day. We will ensure this process is as seamless and prompt as possible.

On a brighter note, Saturday and Sunday are set to be truly magical. Starting from 1pm on both days, we look forward to uniting with all of you to celebrate life and music, and dance through the sunset with the iconic backdrop of the New York skyline, right in the heart of New York City. Let's come together, stronger than before, to create moments that will be etched in our memories forever.

While words cannot fully express the depth of our remorse about Day 1, please know that this decision was not made lightly. Your safety and experience are always paramount, and we did not want to compromise the quality and integrity of the event you truly deserve.

We ask for your forgiveness and understanding during this challenging time. We are profoundly sorry for all the inconvenience and disappointment this will cause. Your unwavering support has always been the backbone of Electric Zoo, and we pledge to make the remaining days of the festival an unforgettable experience.

53. But certain insiders said that explanation was bogus: "It was total bulls–t. All the vendors are in the US, and in the Tri-State area. They started planning very late in the game and were not reserving trucks, equipment, inventory, putting stages together," the source said.[3]

54. In addition to Friday's cancellation, and perhaps more egregiously, things turned worse for Electric Zoo fans on Sunday when they were left to languish in the heatwave for hours after being greeted by never ending lines to enter the festival. Adding insult to injury, two days later, the Music Event Defendants again violated the terms of the ticket contract by denying entry to approximately 7000 ticket buyers because, it was reported, Music Event Defendants sold at least 7,000 more tickets to Sunday's show than the capacity of the venue.

---

[3]   *See* https://pagesix.com/2023/09/09/brooklyn-mirages-very-late-planning-to-blame-for-electic-zoo-chaos/

55.     "Electric Zoo oversold tickets by 7,000 people, which led to the festival prohibiting at least that many attendees from entering on Sunday, according to the NYPD.  The decision to prohibit entry led to chaos and people storming the gates to get into the festival, which is held on Randalls Island."[4]

56.     In a statement on social media, Electric Zoo organizers and/or public relations shared:

> *It is with deep regret that we need to inform you that due to the challenges caused by Friday cancelation, we have reached our venue's capacity earlier than anticipated for today, Sunday. For the safety and well-being of everyone on site, we will not be admitting any additional attendees today.*
>
> *If you are on your way or were planning to come later, we kindly ask that you refrain from coming to the festival site.*
>
> *Your safety and festival experience remain our top priorities. We deeply apologize for this inconvenience and hope you understand that this decision was made with everyone's best interest in mind. Refund details are to follow.*
>
> *Thank you for your continued love, patience, and understanding. We promise to make it up to you.*

***ELECTRIC ZOO FESTIVAL***

57.     One news outlet stated, "[t]he festival has a 42,500 person capacity, and the NYPD estimated that organizers oversold it by 7000 tickets on Sunday, leading to gates being closed to ticketholders starting at 6:30 PM. A large group of people rushed the gates not long after, as shown in footage posted to social media."[5]

---

[4]     *See* https://pix11.com/news/local-news/electric-zoo-festival-overbooked-by-7000-people-resulting-in-chaos/

[5]     *See* https://www.brooklynvegan.com/electric-zoo-oversold-by-7000-tickets-nypd-says-eric-adams-addresses-chaos

58.    "Every single staff that is at EZoo is mad at EZoo," a security guard tells Rolling Stone.  "Why would you oversell the tickets?"  The EZoo app notified guests at 7:40 p.m. that due to Friday's cancellation the venue had reached capacity earlier than anticipated. [6]

59.    One attended commented: "We felt like we were cattle."[7]

60.    While eager and excited music fans were prepared for what was supposed to be a truly special musical experience, they were met only with chaos, cancellations, stampedes, and rejection at the gate despite having and paying for valid Sunday tickets.

61.    Outrage spread quickly on social media and throughout traditional news outlets, with the New York Post, the New York Daily News, Gothamist, and other news outlets describing the dangerous events unfolding.  Social media users dubbed the festival "Fyre Festival 2.0."

62.    New York City Mayor Eric Adams said the city will take action against Electric Zoo Festival organizers.[8]

63.    During a September 5, 2023 NYPD briefing, Mayor Adams said "[i]t's unfortunate that the organizers wanted to turn our city into a zoo, and we were not going to allow that to happen. And we will be dealing with them in the next few days based on their behavior and actions."[9]

---

[6]    See https://www.rollingstone.com/music/music-news/electric-zoo-reaches-capacity-gate-rush-ticket-holders-turned-away-1234817774/

[7]    Id.

[8]    See https://www.cbsnews.com/newyork/news/mayor-eric-adams-says-city-will-take-action-against-electric-zoo-festival-organizers/

[9]    See https://gothamist.com/news/avant-gardner-owners-were-behind-electric-zoo-fiasco-mayor-adams-promises-response

64.     Class members have yet to receive refunds for canceling the September 1, 2023 day of Electric Zoo and/or for denying entry or refusing access to the September 3, 2023 day of Electric Zoo despite those class members collectively incurring millions of dollars in costs and expenses.

## V.     FACTUAL BASIS OF RICO ELEMENTS

65.     The RICO Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Amended Complaint, namely, through a multi-faceted operation built on fraudulent inducements to Plaintiffs and the class to patronize Avant Gardner, and CityFox events and venues and purchase goods and services at the events and venues which routinely oversold events. The RICO defendants and co-conspirators have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating in the United States, funded primarily from the United States, and directed mainly from the United States.

66.     The RICO Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), referred to hereinafter as the "Enterprise." Each of the RICO Defendants participated in the operation or management of the Enterprise.

67.     At all relevant times, the Enterprise was engaged in, and its activities affected interstate commerce within the meaning of 18 U.S.C. § 1962(c).

68.     As described herein, the RICO Defendants engaged in a wide-ranging scheme or artifice to defraud customers and the greater public. The ultimate objective of the RICO Defendants' scheme or artifice to defraud was to cause plaintiffs and the class to spend as much

money as possible at defendant's venues and events to the direct benefit of the individual and entity RICO defendants.

69.     In furtherance of their scheme, and as described herein, the RICO Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be de• posited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

      a.     emails and website postings incorporating false and misleading statements.

      b.     wirings and/or mailings between and among the RICO Defendants;

      c.     communications directed toward New York City and state officials and regulators incorporating false and misleading statements regarding Avant Gardner's operations.

      d.     funds transferred between/among investors in Avant Gardner to the RICO Defendants, with the intent that those funds be used to promote the carrying on of the RICO Defendants' criminal activities; and

      e.     electronic transactions of tickets to events and receipt of funds for financing RICO defendants' illegal activities.

70.     The RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud plaintiffs and the class into paying the RICO Defendants and their co-conspirators.  The RICO Defendants further caused statements, which statements the RICO Defendants knew to be false or misleading, to be disseminated to the general public, and to the media, and to multiple state and city agencies, with the intent that those

statements be believed. The RICO Defendants knowingly engaged in the aforementioned conduct.

71.     While the organization of the criminal enterprise has changed over time, and its members may have held different roles at different times, the criminal enterprise has generally been structured to operate as a unit in order to accomplish the goals of their criminal scheme:

a.     Defendants Bildstein and Wiederkehr have been responsible for oversight of the operation and commission of predicate acts, and have directed other conspirators to take actions necessary to accomplish the overall aims of the criminal enterprise namely.

b.     The Real Estate Defendants have been primarily responsible for operation of venues in an illegal manner, or allowing same.

c.     The Investment Defendants have served as a conduit for funding and otherwise furthering the RICO Defendants' criminal enterprise and receiving and/or spending the proceeds from RICO predicate acts.

72.     The "Music Event Defendants" planned, promoted, controlled and executed the operations of EZNY 23 and Avant Gardner. The Real Estate Defendants knowingly and willingly allowed their real property to be used to fraudulently promote and operate events.

73.     The Investor Defendants financed the operations of the enterprise and shared in the revenues generated by other Defendants' racketeering activities.

**A.     The "Conduct" Element**

74.     Defendants all participated in the operation and/or management of the "enterprise" as follows:

> Each of the defendants above occupied a position in the chain of command or knowingly assisted, acquiesced in and/or implemented the racketeering acts or were indispensable to achieving the enterprise goals, *i.e.*, generating revenue.

75.     The conduct is related to RICO purposes because the conduct embraces criminal acts (*i.e.*, money laundering statutes; and the mail and wire fraud statutes) that have similar purposes, results, participants, victims and are not isolated events.

**B.      The "Enterprise" Element**

76.     The Defendants are an association-in-fact which is engaged in, or whose activities affect, interstate commerce and have associated for a common purpose.

77.     At the top of the enterprise structure are defendants Bildstein and Wiederkehr, whom public reports describe as controlling, or as the direct or indirect owners of the other Defendants.

78.     The Enterprise has a real estate arm.

79.     The Enterprise has a music event arm.

80.     The Enterprise has an investment arm.

81.     All of the Enterprises' various arms and all of the respective members are committed to a common purpose and share in the revenues generated by the Enterprises' common purpose and activities.

82.     The enterprise members function as a continuing unit because Avant Gardner continues to promote events and members have evinced a desire to promote and produce events and operate Avant Gardner in the illegal manner as it has in the past by unilaterally dismissing the SLA monitor and failing to provide refunds to EZNY 23 ticket buyers. All defendants were aware of the nature and scope of the enterprise and intended to participate in it.

C.      **The "Pattern" Element**

83.      A pattern is defined as at least two acts of racketeering activity "within ten years of each other." 18 U.S.C. 1961(5). The enterprise has engaged in multiple predicate acts since 2018.

84.      The Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), to wit.

85.      The predicate acts described herein are related and are continuing and not isolated acts.

86.      The predicate acts are related because, *inter alia*, they were all directed toward inducing Plaintiffs and the class members to spend money to patronize the Defendants' venues and events which monies were eventually distributed to all members of the enterprise.

D.      **The "Continuity" Element**

87.      The related predicate acts were committed over a substantial period of time from at least 2018 through EZ 23 festival and/or by its nature continues into the future and threatens to be repeated. "Continuity" is a foregone conclusion in light of Avant Gardner's dismissal of the SLA monitor <u>and</u> Defendants' refusal to honor the obligation to make refunds.

88.      Overselling events has become a regular way of doing business at Defendants' venues and events.

E.      **Predicate Acts**

89.      Defendants have on multiple occasions, acting in their individual capacities and as agents for the Investment Member Defendants have knowingly caused the transportation, transmission, and/or transfer of funds to or from the United States to themselves and to The

Investment Member Defendants and other entities with the intent that those funds be used to promote the carrying on of unlawful activity in violation of 18 U.S.C. §§ 1341, 1343 and The Controlled Substances Act.

### (i)    Money Laundering Predicates

90.    "Money Laundering" constituting predicate RICO acts include, *inter alia*, a prohibition on depositing or spending more than $10,000 of the proceeds from a predicate offense (18 U.S.C. § 1957) and outlaws financial transactions involving the proceeds of other predicate offenses. (18 U.S.C. § 1951).

91.    The Investment Defendants, upon information and belief, have received from the Music Event Defendants and/or the Real Estate Defendants, and continue to receive, deposit and spend more than $10,000 of proceeds generated from acts and conduct constituting predicate acts.

92.    The enterprise through the Investment Defendants engaged in conduct constituting money laundry by generating monies depositing and/or spending proceeds generated through operation of venues engaged in predicate acts.

### (ii)    Mail And Wire Fraud Predicate

93.    The particular uses of wire and mail communications in furtherance of the RICO Defendants' scheme or artifice to defraud that constitute violations of 18 U.S.C. $$ 1341 and 1443, including which individual defendant caused the communication to be mailed or wired, when the communication was made, and how it furthered the fraudulent scheme are described herein.

94.    The enterprise engaged in conduct constituting mail and wire fraud by using the internet to transmit materially false and misleading promotions soliciting customers for EZNY

23, the "after-parties" and events at Avant Gardner to buy tickets well beyond the legally permitted capacity.

95.     The enterprise engaged in further instances of wire fraud via its promotion of EZNY 23 by misrepresenting material aspects of the show and using false representations about EZNY 23 to solicit sales of after party tickets to Avant Gardner in connection with EZNY 23.

## VI.     INJURIES AND CAUSATION

96.     Plaintiffs and the Class were injured in his/her/their property by reason of the RICO Defendants' violations of 18 U.S.C. § l 962(c). The injuries to Plaintiffs caused by reason of the violations of 18 U.S.C. § l 962(c) include but are not limited to monetary damage.

97.     Further, these injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. § 1962. Plaintiffs are the ultimate victim of the RICO Defendants' unlawful Enterprise. Plaintiffs have been injured in its property in an amount to be determined at trial.

98.     Pursuant to 18 U.S.C. § l 964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

99.     Plaintiffs are further entitled to, and should be awarded, a preliminary and permanent injunction that compels Defendants, their assignees, and anyone else acting in concert with them-including to refund the Avant Gardner event ticket prices and the Electric Zoo ticket prices to Plaintiffs and the Class.

100.    Plaintiffs were injured by reason of the Defendants' and the enterprises acts.

## CLASS ACTION ALLEGATIONS

101.    This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. Rule 23 because there is a well-defined community of interest in the litigation and

the proposed class is easily ascertainable. The class includes all persons who purchased tickets to Avant Gardner events at its venue or to EZNY 23.

102.    This action satisfies the predominance, typicality, numerosity, superiority, and adequacy requirements of these provisions.

a.   Numerosity: The plaintiff class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiffs at this time, Plaintiffs are informed and believes, and based thereon alleges, that thousands of class members.

b.   Commonality: Common questions of law and fact exist as to all members of the plaintiff class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited to:

   i.   Whether Defendants made false representations about Electric Zoo;

   ii.  If so, whether Defendants knew they were false or were reckless as to their veracity at the time they were made;

   iii. Whether Defendants negligently misrepresented various facts regarding Electric Zoo; and

   iv.  Whether Defendants breached any implied or explicit contractual obligations to ticket buyers and to attendees of Electric Zoo.

c.   Typicality: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the members of the class sustained damages arising out of Defendants' wrongful and fraudulent conduct as alleged herein.

d.   Adequacy: Plaintiffs will fairly and adequately protect the interests of the members of the class. Plaintiffs have no interest that are adverse to the interests of the other Class Members.

e.   Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

f.   Public Policy Considerations: When a company or individual engages in fraudulent and predatory conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party. Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights. The members

of the class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court. There is a well-defined community of interest in the questions of law or fact affecting the Plaintiff Class in that the legal questions of fraud, breach contract, and other causes of action, are common to the Class Members. The factual questions relating to Defendants' wrongful conduct and their ill-gotten gains are also common to the Class Members.

103.    Plaintiffs' claims are typical of the claims of the members of the Class, as Plaintiffs and the other members of the Class sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

104.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

105.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for members of the Class to seek redress individually for the wrong done to them. There will be no difficulty in the management of this action as a class.

## **COUNT I**

### **SECTION 1962(a)**
### **(Against All Defendants)**

106.    Plaintiffs repeat and reallege each of the previous allegations as if more fully set forth herein.

107.     RICO Section 1962(a) makes it unlawful for a person who has received any income derived directly or indirectly from a pattern of racketeering activity to use or invest directly or indirectly any part of such income, or proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise engaged in or affecting interstate commerce.

108.     The Defendants used and invested the proceeds of racketeering activity in the enterprise by taking the revenues earned from operation of the venues and investing same in concert events and EZ 23 which are part of the enterprise.

109.     The RICO conspiracy is expressed insofar as the members of the enterprise had written agreements to which they were parties and can also be inferred from the interdependence of the activities and person involved.

110.     Each defendant either actually conspired to operate or facilitate the enterprise himself or itself or agreed to facilitate the scheme that includes operation and/or management of the enterprise.

## COUNT II

### (VIOLATIONS OF RICO, 18 U.S.C. § 1962(c))
### (Against All RICO Defendants)

111.     Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

112.     Section 1962(c) makes it unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to conduct or participate in an enterprises affairs through a pattern of racketeering activity.

113.     At all relevant times, plaintiff is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

114.    At all relevant times, each RICO Defendant is a person within the meaning of 18

U.S.C. §§ 1961(3) and 1962(c).

115.    Each person is distinct from the Enterprise.

116.    Each of the RICO Defendants has engaged in multiple predicate acts, as described

herein. The conduct of each of the RICO Defendants described herein, constitutes a pattern of

racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### COUNT III

**(CONSPIRACY TO VIOLATE RICO, VIOLATION OF 18 U.S.C. § 1962(d))**
**(Against All RICO Defendants)**

117.    Plaintiff realleges and incorporates herein by reference each and every foregoing

paragraph of this Complaint as if set forth in full.

118.    Section 1962(d) makes it unlawful for person to conspire to violate 1962(a), (b) or

(c).

119.    The RICO Defendants have unlawfully, knowingly and willfully combined,

conspired, confederated and agreed together and with others to violate 18 U.S.C. $ 1962(c) as

described above, in violation of 18 U.S.C. § 1962(d).

120.    Upon information and belief, the RICO Defendants knew that they were engaged

in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of

such racketeering activity, and the participation and agreement of each of them was necessary to

allow the commission of this pattern of racketeering activity. This conduct constitutes a

conspiracy to violate 18 U.S.C. $ 1962(0), in violation of 18 U.S.C. $ 1962(d).

121.    Upon information and belief, the RICO Defendants agreed to conduct or

participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's

affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

122.     Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiffs.  It was part of the conspiracy that the RICO Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth herein.

123.     As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U .S.C. § 1962(d), Plaintiffs has been injured in its business and property.

124.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

125.     Plaintiffs are further entitled to, and should be awarded, a preliminary and permanent injunction that compels Defendants to refund Electric Zoo ticket prices to Plaintiffs and the Class.

## COUNT IV

### FRAUD – INTENTIONAL MISREPRESENTATION RELIANCE
### (By Plaintiffs Individually and On Behalf of
### All Class Members Against The Music Event Defendants)

126.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

127.     As stated above, all Music Event Defendants falsely represented that they would present shows on each of the three festival days and that ticket holders were entitled to enter the grounds and see the shows. Music Event Defendants also represented that tickets to Avant Gardner events guaranteed admission but tickets sold beyond permitted capacity were at best "standby" tickets.

128.    Defendants have, through various social media outlets, promoted events vigorously. As the organizers and sponsors of this event, Music Event Defendants knew that the representations were false; or at a minimum, Defendants made the representation with reckless disregard for the truth.

129.    These representations by Music Event Defendants were clearly made to promote the event and increase the number of attendees to the event.

130.    Based on the representations by Defendants, Plaintiffs purchased their tickets and attempted to attend the event.

<u>**COUNT V**</u>

**BREACH OF CONTRACT**
**(By Plaintiffs Individually and On Behalf of All Class Members Against Avant Gardner)**

131.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

132.    Plaintiffs and all other members of the class entered into valid and enforceable contracts with Defendants for concerts that were promised to be held on Friday, September 1, 2023 and/or Sunday September 3, 2023 and other Avant Gardner events. The tickets promise unconditional guaranteed entry.

133.    Plaintiffs and all other members of the class fully performed under the contracts by paying valuable consideration to Defendants.

134.    Defendants breached the contracts by selling tickets to oversold events at Avant Gardner and by cancelling the EZNY 23 Friday show on the date of the concert, hours before it was initially scheduled to begin and by barring or delaying Plaintiffs and other class members from entering the Saturday or Sunday shows.

135.    As a direct and proximate result of said breach, Plaintiffs and all other members of the class have suffered actual and consequential damages.

## COUNT VI

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(By Plaintiffs Individually and On Behalf of All Class Members Against Avant Gardner)**

136.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

137.    Plaintiffs entered into contracts with Defendants to provide a music festival experience in exchange for money. Plaintiffs provided payment in consideration for Defendants' promise to provide accommodations, vendors, and A-level musical talent.

138.     As shown above, Music Event Defendants frustrated Plaintiffs' right to receive the benefits of the contracts.

## COUNT VII

**VIOLATION OF N.Y. GBL § 349 and 350**
**(By Plaintiffs Individually and On Behalf of All Class Members**
**Against The Music Event Defendants And Real Estate Defendants)**

139.    Plaintiffs repeat reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

140.    Plaintiffs and the other members of the Class have been injured and suffered damages by violations of Section 349(a) of New York General Business Law (the "GBL"), which states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

141.    Plaintiffs and other members of the Class have been injured and suffered damages by violation of Section 350 of the GBL, which prohibits "false advertising in the conduct of any business, trade or commerce" in New York.

142.    Defendants engaged in acts and practices in the State of New York that were deceptive or misleading in a material way, and/or constituted false advertising and that injured Plaintiffs and the other members of the Class. Such acts and practices were directed at consumers, and likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

143.    Defendants' deceptive acts include representing or omitting that (1) Electric Zoo would take place as scheduled on Friday, September 1st, 2nd, 3rd, 2023; (2) Electric Zoo had all the necessary equipment, materials, supplies, suppliers, vendors, labor and personnel to handle all the maintenance, construction, and build out for Electric Zoo's design and infrastructure like the stages, seating, bathrooms, and concessions, (3) Electric Zoo would pass all inspections and tests done by the City and other agencies or regulators; (4) Electric Zoo would receive all the necessary permits and approvals by government agencies and other authorities to take place as scheduled; (5) Electric Zoo would not be oversold or exceed capacity; (6) Electric Zoo capacity and crown control would not violate, and comply at all times with, New York City fire codes and other capacity and safety rules and regulations applicable to New York concerts or festivals; (7) that everyone with a valid ticket would be able to attend and/or access Electric Zoo; (8) EZNY had oversold their shows beyond permitted capacity; and(9) that events at Avant Gardner had been oversold beyond permitted capacity.

144.    Plaintiffs and the other members of the Class have been damaged by Defendants' violations of Section 349 and/or 350 of the GBL, for which they seek recovery of the actual, or,

alternatively, statutory, damages they suffered because of Defendants' willful and wrongful violations of Sections 349 and/or 350 in an amount to be determined at trial.

145.    Plaintiffs and the other members of the Class seek treble damages and an award of reasonable attorney's fees pursuant to Section 349 and/or 350 of the GBL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, and on behalf of the Class Members, as well as the general public, pray for judgment as follows:

## **CLASS CERTIFICATION**

1.    For an order certifying the proposed Class;

2.    That Plaintiffs be appointed as the Representatives of the Class; and

3.    That counsel for Plaintiffs be appointed as Class Counsel.

## **AS TO ALL CAUSES OF ACTION**:

1.    For all actual, consequential, and incidental losses and damages, according to proof;

2.    For an accounting and imposition of a constructive trust;

3.    For punitive damages, where permitted by law;

4.    For attorneys' fees, where permitted by law;

5.    For costs and suit herein incurred;

6.    Awarding Plaintiffs and the other members of the Class treble damages for Defendants' violations of GBL § 349 and/or 350; and

7.    For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

Dated: November 22, 2023

Respectfully submitted,

**SQUITIERI & FEARON, LLP**


By: *Lee Squitieri*
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
lee@sfclasslaw.com

**MOORE KUEHN, PLLC**
Fletcher Moore
30 Wall Street, 8th Floor
New York, New York 10005
Telephone: (212) 709-8245
Facsimile: (917) 634-3035
fmoore@moorekuehn.com

***Attorneys For Plaintiffs***