IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE BROCKMOLE, LAUREN BAIR and NICK ERCKLENTZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>EZ FESTIVALS LLC, AVANT GARDNER, LLC, MADE EVENT LLC, CITYFOX, REYNARD PRODUCTIONS, JURGEN BILDSTEIN, PHILLIP WIEDERKEHR, AGDP HOLDING INC., GARDNER PURCHASER LLC, WIEDERKEHR ASSOCIATES, STEWART PURCHASER LLC, WRE PARENT US HOLDING CORP. INC., WRE MANAGEMENT LLC, WRE HOLDING AG and JOHN DOES NO. 1-10,<br><br>Defendants. | Civil Action No. 1:23-cv-08106-MMG<br><br><br><br>**(Oral Argument Requested)** |

**MEMORANDUM OF LAW IN SUPPORT OF
THE EZ DEFENDANTS' MOTION TO DISMISS CERTAIN DEFENDANTS
AND COUNTS OF THE BROCKMOLE COMPLAINT**

Respectfully submitted,

KAUFMAN DOLOWICH, LLP
40 Exchange Place – 20th Floor
New York, New York 10005
Phone: (212) 485-9600

By:   Patrick M. Kennell
     pkennell@kaufmandolowich.com
     Kathleen A. Mullins
     kathleen.mullins@kaufmandolowich.com
     *Attorneys for Defendants*
     EZ FESTIVALS, LLC, AVANT
     GARDNER, LLC, MADE EVENT LLC,
     and JURGEN BILDSTEIN

Dated: March 21, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS AND ALLEGATIONS ......................................................... 3

    A. The EZoo Festival Is Wholly Owned by Defendant EZ Festivals, LLC, and None of the Other Entities Named Own or Promote the Festival ......................................................... 4

    B. The 2023 EZoo Festival Suffered Permitting and Construction Setbacks, Leading to Cancellation of the Friday Session and Delay of the Saturday Session ............................ 5

    C. The Brockmole Plaintiffs Filed This Action Within Days of the 2023 EZoo Festival's Conclusion ..................................................................................................................... 6

    D. The Brockmole Plaintiffs Amended Their Complaint, Alleging Novel Theories Under Federal RICO Laws ......................................................................................................... 7

    E. The EZ Defendants Outlined Their Dismissal Arguments in a Pre-Motion Letter, And the Brockmole Plaintiffs Chose Not to Amend Their Pleading Any Further ........................... 8

LEGAL ARGUMENTS ................................................................................................... 9

    I. STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS ........................................ 9

    II. THE BROCKMOLE PLAINTIFFS HAVE NO PLAUSIBLE CLAIM AGAINST AVANT GARDNER FOR THE 2023 EZOO FESTIVAL, AND THEY FAIL TO ADEQUATELY PLEAD ANY CLAIM FOR CORPORATE OFFICER LIABILITY AGAINST MR. BILDSTEIN .......................................................................................... 10

    III. THE RICO COUNTS FAIL TO SATISFY THE REQUIRED HEIGHTENED PLEADING STANDARD UNDER THE FEDERAL RULES AND OTHERWISE FAIL TO STATE A PLAUSIBLE CLAIM AGAINST THE EZ DEFENDANTS .................. 12

        A. Count I (Section 1962(a) RICO) Fails to Allege a Plausible "Enterprise," and the ACAC's Assertions of Mail and Other Fraud Do Not Meet the Heightened Pleading Standards of Rule 9(b) .............................................................................................. 12

            1. The Brockmole ACAC's "Predicate Acts" Allegations of Wire and Other Fraud Are Not Alleged With Sufficient Particularity .................................................... 13

            2. The ACAC Does Not Allege a Plausible RICO "Enterprise" As Required, Where Supposedly Illegal Proceeds Were Used to Acquire the 2023 EZoo Festival ...... 15

B.  Count II (Section 1962(c) RICO) Likewise Fails to Allege the Predicate Acts of Mail and Other Fraud With the Required Specificity Under Rule 9(b) .............................. 16

C.  Count III (Section 1962(d) Conspiracy) Fails to Plausibly Allege With Particularity Any "Agreement" Among the Defendants ................................................................ 17

IV. PLAINTIFFS' FRAUD (COUNT IV) AND GOOD FAITH AND FAIR DEALING CLAIMS (COUNT VI) MUST BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM ............................................................................................... 18

V.  THE BROCKMOLE PLAINTIFFS HAD PLENTY OF OPPORTUNITY TO REFINE THEIR PLEADING, AND HAVING WAIVED THE OPPORTUNITY TO AMEND THE ACAC, NO FURTHER AMENDMENTS SHOULD BE ALLOWED .................. 21

CONCLUSION ......................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Ashcroft v. Iqbal*
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................................... 9, 10

*Baisch v. Gallina*
   346 F.3d 366 (2d Cir. 2003) .................................................................................................. 17

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................................... 9, 10

*Black v. Ganieva*
   619 F.Supp.3d 309 (S.D.N.Y. 2022) ..................................................................................... 17

*Bridgestone v. Recovery Credit Services, Inc.*
   98 F.3d 13 (2d Cir. 1996) ...................................................................................................... 19

*Cohen v. Koenig*
   25 F.3d 1168 (2d Cir. 1994) .................................................................................................. 11

*DeFalco v. Bernas*
   244 F.3d 286 (2d Cir. 2001) .................................................................................................. 16

*Global Network Commc'ns, Inc. v. City of New York*
   458 F.3d 1507 (2d Cir. 2006) ................................................................................................. 3

*Gottehrer v. Viet-Hoa Co.*
   170 A.D.2d 648 (2d Dep't 1991) .......................................................................................... 11

*In re Integrated Resources Real Estate*
   850 F.Supp. 1105 (S.D.N.Y. 1993) ...................................................................................... 12

*In re Tether and Bitfinex Crypto Asset Litigation*
   576 F.Supp.3d 55 (S.D.N.Y. 2021) ................................................................................. 13, 17

*In re Tops Holding II Corp.*
   646 B.R. 617 (Bankr. S.D.N.Y. 2022) ................................................................................... 3

*Indep. Order of Foresters v. Donald Lufkin & Jenrette, Inc.*
   157 F.3d 933 (2d Cir. 1998) .................................................................................................. 19

*Katzman v. Victoria's Secret Catalogue*
   167 F.R.D. 649 (S.D.N.Y. 1996) .......................................................................................... 12

*Leung v. Law*
　387 F.Supp.2d 105 (E.D.N.Y. 2005) ............................................................... 13, 15

*Marine Midland Bank v. Russo Produce Co.*
　50 N.Y. 2d 31 (N.Y. 1980) ...................................................................................... 11

*Moore v. PaineWebber, Inc.*
　189 F.3d 165 (2d Cir. 1999)..................................................................................... 14

*Ouakine v. MacFarlaine*
　897 F.2d 75 (2d Cir. 1990)....................................................................................... 13

*Paul Hobbs Imports Inc. v. Verity Wines LLC*
　No. 21-cv-10597-JPC, 2023 WL 374120 (S.D.N.Y. Jan. 24, 2023) ........................... 13, 16, 18

*Roth v. Jennings*
　489 F. 3d 499 (2d Cir. 2007)....................................................................................... 3

*Salinas v. United States*
　522 U.S. 52 (1997)...................................................................................................... 17

*Schmitd v. Fleet Bank*
　16 F.Supp.2d 340 (S.D.N.Y. 1998) ........................................................................... 12

*Stern v. H. DiMarzo, Inc.*
　77 A.D.3d 730 (2d Dep't 2010) ................................................................................ 11

*TufAmerica, Inc. v. Diamond*
　968 F.Supp.2d 588 (S.D.N.Y. 2013)............................................................................ 3

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*
　303 F.Supp.2d 432 (S.D.N.Y. 2004)........................................................................... 18

*United States v. Weaver*
　860 F.3d 90 (2d Cir. 2017)......................................................................................... 14

*Washington v. Kellwood Company*
　No. 05-cv-10034-DAB, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ........................ 20

## STATUTES

18 U.S.C. §§ 1962(a) ................................................................................................... 12

1962(c) ........................................................................................................................ 12

1962(d)........................................................................................................................ 12

## R<small>ULES</small>

Fed.R.Civ.P 9(b) ................................................................................................................... 13-14

Fed.R.Civ.P. 12(b)(6)................................................................................................................ 9

## PRELIMINARY STATEMENT

This putative class action lawsuit, originally brought by concertgoers of the 2023 Electric Zoo (EZoo) Festival on Randall's Island in New York City—who claim their tickets were not honored for the entirety of the planned three-day annual electronic music festival or that the conditions of last year's festival were not what they expected when they bought their tickets—has somehow morphed from a garden variety breach of contract lawsuit into an action attempting to plead wild fraud allegations and RICO conspiracy theories, with the obvious strategic goal of ensnaring other events companies, their principals, and even their *landlords*,[1] who had absolutely nothing to do with operating or promoting the 2023 EZoo Festival.  By this Rule 12(b)(6) motion to dismiss, Defendants EZ Festivals, LLC, Avant Gardner, LLC, Made Event, LLC, and Jurgen Bildstein (the "EZ Defendants"), seek dismissal of certain of the EZ Defendants completely, as well as of the RICO, fraud and "covenant of good faith and fair dealing" Counts (I, II, III, IV, and VI) of the Brockmole Plaintiffs' Amended Class Action Complaint (ACAC).

Because Defendant Avant Gardner is not "an owner, operator, organizer, [or] promoter of Electric Zoo Music Festival," as alleged in the ACAC, it is not a proper party to this action and should be dismissed.  The ACAC also fails to sufficiently allege any individual liability on the part of individual Defendant Jurgen Bildstein, who is a principal in Defendant EZ Festivals, the entity that actually owns, operates and promotes the EZoo Festival (which was previously owned by Defendant Made Event, a now-defunct entity), warranting dismissal against Mr. Bildstein.

---

[1]     Those other Defendants include Wiederkehr Associates AG, Phillip M. Wiederkehr, CityFox, Reynard Productions, AGDP Holding Inc., Gardner Purchaser LLC, Wiederkehr Associates, Wiederkehr Real Estate AG, Stewart Purchaser LLC, WRE Parent US Holding Corp. Inc., WRE Management LLC, and WRE Holding AG.  There is no evidence that, as of the date of this motion to dismiss, these additional Defendants have even been served.

Improper parties aside, five of the seven Counts of the ACAC fail to state a claim in any event.  The RICO Counts (I, II and III)—specifically, the allegations that the EZ Defendants were an "enterprise" and that each of the Defendants were "aware" of and/or "conspired" to commit the alleged "racketeering activity"—fail to satisfy the stringent pleading standards for a RICO claim under 18 U.S.C. §§ 1962(a), 1962(c), and 1962(d).  And the claims for "Fraud – Intentional Misrepresentation" (Count IV) and "Breach of the Implied Covenant of Good Faith & Fair Dealing" (Count VI) should be dismissed as they are duplicative of the Plaintiffs' breach of contract claim.  Accordingly, those claims should be dismissed with prejudice.

The Brockmole Plaintiffs have had _plenty_ of opportunity to amend and fine-tune their pleadings, including from their original complaint that asserted fraud, negligent representation and breach of contract claims against the EZ Defendants, (ECF No. 1), to their ACAC.  And the Brockmole Plaintiffs specifically had an opportunity to amend their pleading in response to the EZ Defendants' February 15, 2024 pre-motion letter—which further amendment, if any, the Individual Rules of originally-assigned District Judge Marrero required the Plaintiffs to announce by February 22, 2024.  The Brockmole Plaintiffs chose not to further amend in response to the EZ Defendants' dismissal arguments, and they should not be allowed to seek any further amendment at this late stage.

For all those reasons, the Court should grant the EZ Defendants' motion to dismiss Avant Gardner and Mr. Bildstein and to dismiss Counts I, II, III, IV, and VI of the ACAC in their entirety and with prejudice.

## STATEMENT OF FACTS AND ALLEGATIONS[2]

The EZoo Festival is a three-day music festival held at Randall's Island Park in New York City every Labor Day weekend. (*See*, ECF No. 23, "ACAC," at ¶ 45). The 2023 festival was scheduled to be held on Friday, September 1, 2023, Saturday, September 2, 2023, and Sunday, September 3, 2023. (*Id.*, at ¶ ¶ 1, 45).

Plaintiffs Nicole Brockmole, from North Carolina, alleges she bought tickets for the Friday September 1st and Sunday September 3rd days of the 2023 EZoo Festival, while Plaintiff Lauren Bair of Arizona asserts that she bought tickets to the Friday September 1st session. (ACAC, at ¶ 8-9).  Plaintiff Nick Ercklentz vaguely alleges he "purchased tickets for EZ 2023 weekend." (*Id.*, at ¶ 10).[3]

---

[2]     As is necessary on a Rule 12(b)(6) motion to dismiss, the EZ Defendants refer only to the "facts" as alleged in the ACAC, any exhibits attached or incorporated by reference, matters of public record or of which the Court may take judicial notice, and any document "upon which [the complaint] solely relies and which is integral to the complaint." *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).  A document generally should be considered as "integral" where, for example, "it is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint.'" *In re Tops Holding II Corp.*, 646 B.R. 617, 647 (Bankr. S.D.N.Y. 2022), quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, controls, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F.Supp.2d 588, 592 (S.D.N.Y. 2013).

[3]     Mr. Ercklentz also loosely asserts he "paid to attend events at Brooklyn Mirage unaware that Defendants had oversold events," but importantly, he does not allege *when* those events were or any other circumstances of his purported "payment" to attend some non-descript "events" at Brookly Mirage (in fact, he doesn't even allege that he "attended," just that he purportedly "paid to attend …"). (ACAC, at ¶ 10).

### A.    The EZoo Festival Is Wholly Owned by Defendant EZ Festivals, LLC, and None of the Other Entities Named Own or Promote the Festival

As alleged by the ACAC, Defendant EZ Festivals owned, operated, organized, and promoted the 2023 EZoo Festival, and Defendant Made Event LLC also promoted the EZoo Festival—but Made Event did not "own" or "operate" the festival. (ACAC, at ¶ 14-15; *see also*, Declaration of Patrick M. Kennell, "Kennell Decl.," **Ex. 1** at 1, 6).  Defendant Jurgen Bildstein is the CEO and President of EZ Festivals. (ACAC, at ¶ 5; Kennell Decl., **Ex. 1**, at 1, 6).  While the ACAC incorrectly alleges otherwise, Defendant Avant Gardner, LLC is *not*, in fact, "an owner, operator, organizer, [or] promoter of" the EZoo Festival. (ACAC, at ¶¶ 11; Kennell Decl., **Ex. 1**, at 1, 6).[4]

Apparently theorizing that distinct corporate formalities constitutes racketeering, the Brockmole Plaintiffs later named myriad additional Defendants, solely because of their alleged association with Avant Gardner (which does not even own the EZoo Festival anyway), including alleged investors and landlords of the EZ Defendants: (1) Phillip W. Wiederkehr, a private equity manager alleged to be a partner of Mr. Bildstein; (2) CityFox, a Swiss-owned concert promotion company that allegedly "produces and promotes events" for Avant Gardner; (3) Reynard Productions, an events company that allegedly "produced" the 2023 EZoo Festival; (4) AGDP Holding Inc., the alleged "owner or lessee" of Avant Gardner's Brooklyn headquarters; (5) Gardner Purchaser LLC, allegedly the "landlord" to AGDP Holding; (6) Stewart Purchaser LLC, another alleged "landlord" to AGDP Holding; (7) Wiederkehr Associates, an alleged real estate

---

[4]    Avant Gardner is the owner and operator of several Brooklyn venues which have nothing to do with the EZoo Festival.  For example, as the ACAC acknowledges, Avant Gardner owns and operates The Brooklyn Mirage, a premier and unrivaled event space and entertainment venue located in Brooklyn, New York. (ACAC, at ¶ 11; *see also*, https://www.avant-gardner.com/the-brooklyn-mirage.).

investment d/b/a; (8) Wiederkehr Real Estate AG, alleged to be a property manager (but not of the EZoo Festival); (9) WRE Management LLC, also an alleged property manager of Avant Gardner's Brooklyn headquarters (but not the EZoo Festival); (10) WRE Parent US Holding Corp. Inc., a real estate company or investor, and; (11) WRE Holding AG, a Swiss parent company to the WRE real estate entities. (ACAC, at ¶¶ 5, 16-17, 19-25).

Some of these later-named Defendants appear to have been served only in the last couple of weeks, however.

**B.      The 2023 EZoo Festival Suffered Permitting and Construction Setbacks, Leading to Cancellation of the Friday Session and Delay of the Saturday Session**

First established in 2009, the Electric Zoo Festival has become one of New York City's largest and most well-known music festivals, featuring top performers and artists in electronic music from around the world. (ACAC, at ¶ 45).  The EZoo Festival is regulated and overseen by the Randall's Island Park Authority (RIPA) and various New York City agencies, including the NYC Parks Department, NYPD and FDNY. (*Id*., at ¶ 47).

For the 2023 EZoo Festival, EZ Festivals unfortunately lost a full day of construction and set-up because of supply chain and weather issues, resulting in non-issuance of permits from NYC authorities for main stage in time. (ACAC, at ¶ 52).  As a result of those unavoidable construction and permitting delays, and at the direction of officials with RIPA, the NYC Parks Department and the FDNY, EZ Festivals had no choice but to notify ticketholders that the Friday September 1st EZoo performances were cancelled and to delay by two hours the start of the Saturday September 2nd performances. (ACAC, at ¶¶ 52-53).  But the remaining Saturday September 2nd and Sunday September 3rd EZoo performances went forward. (*Id*., at ¶ 53).

On the evening of the Sunday September 3rd performances, however, EZ Festivals was informed by New York City officials that the event had reached capacity and that no further entries would be permitted. (ACAC, at ¶ 57).   The Brockmole Plaintiffs allege that the Defendants oversold approximately 7,000 tickets to the 2023 EZoo Festival, causing it to go beyond capacity, and that the Brockmole Plaintiffs were "left to languish in the heatwave for hours after being greeted by never ending lines to enter the festival." (*Id.*, at ¶¶ 50, 55).   Unfortunately, a small group of concertgoers who were held at the gates made the ill-advised decision to "storm[] the gates to get into the festival," which caused event security to experience a brief loss of control. (*Id.*, at ¶ 56).

### C.   The Brockmole Plaintiffs Filed This Action Within Days of the 2023 EZoo Festival's Conclusion

The Brockmole Plaintiffs filed their original Complaint on September 13, 2023, *i.e.*, a little more than a week after the 2023 EZoo Festival concluded. (ECF No. 1).  Alleging a putative class of "all persons who purchased tickets to EZNY Friday and/or Sunday shows but did not attend either show," the Complaint alleged that the "owners, operators, organizers and promoters of [the 2023 EZoo Festival] cancelled the first day of the festival contrary to the terms of the ticket contract and without notice and without a reasonable explanation" and that "two days later, Defendants again violated the terms of the ticket contract by denying entry to approximately 7,000 ticket buyers because, it was reported, Defendants sold at least 7,000 more tickets to Sunday's show than the capacity of the venue." (*Id.*, at ¶¶ 5, 7, 39).  The original Complaint alleged federal jurisdiction under the Class Action Fairness Act of 2005 (CAFA). (*Id.*, at ¶ 22).

The original Complaint alleged purported causes of action for: (1) "fraud – intentional misrepresentation reliance"; (2) "negligent misrepresentation reliance"; (3) breach of contract; (4)

breach of the covenant of good faith and fair dealing; (5) unjust enrichment, and; (6) N.Y. GBL §

349. (ECF No. 1, at 12-15).

### D.       The Brockmole Plaintiffs Amended Their Complaint, Alleging Novel Theories Under Federal RICO Laws

With leave of the Court, the Brockmole Plaintiffs filed their Amended Class Action

Complaint on December 21, 2023. (ACAC, at 32).  In addition to restating their purported breach

of contract, fraud, and N.Y. GBL claims, the Brockmole Plaintiffs expanded their pleading and

their target of Defendants to assert purported RICO claims. (*Id*., at 15-21).

The Brockmole Plaintiffs allege that the RICO Defendants[5] associated together "for the

common purpose of carrying out an ongoing criminal enterprise" and that they ran a "multi-faceted

operation built on fraudulent inducements to Plaintiffs and the class to patronize Avant Gardner,

and CityFox events and venues and purchase goods and services at the events and venues which

routinely oversold events." (ACAC, at ¶ 66).  The ACAC contends that the RICO Defendants

constitute an "association-in-fact enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

1962(c), that the objective behind the alleged RICO scheme was "to cause plaintiffs and the class

to spend as much money as possible at defendant's venues and events to the direct benefit of the

individual and entity RICO defendants." (*Id.*, at ¶¶ 67, 69).  To perpetuate the alleged RICO

conspiracy, the Brockmole Plaintiffs claim that the RICO Defendants transmitted communications

consisting of "false and misleading statements" and transferred funds with the intent that the funds

be used "to promote the carrying on of the RICO Defendants' criminal activities" and to finance

the RICO Defendants' alleged "criminal activities." (*Id.*, at ¶ 70).

---

[5]       The ACAC refers to the supposed "RICO Defendants," but does not define which
Defendants comprise that group. (ACAC, at ¶ 66).

The Brockmole Plaintiffs further assert that Mr. Bildstein and Wiederkehr were responsible for oversight of the alleged enterprise and commission of various alleged "predicate acts." (ACAC., at ¶ 72). The so-called "Real Estate Defendants" are alleged to have been responsible for operating or allowing the non-EZoo venues to be operated in an illegal manner. (*Id.*). The described "Investment Defendants" allegedly "served as a conduit for funding and otherwise furthering the RICO Defendants' criminal enterprise and receiving and/or spending the proceeds from RICO predicate acts." (*Id.*). And the Brockmole Plaintiffs assert that the so-called "Music Event Defendants" "planned, promoted, controlled and executed the operations" of the EZoo Festival and Avant Gardner. (*Id.*, at ¶ 73).

The ACAC purports to assert the following causes of action: (1) violation of RICO Section 1962(a) (against all Defendants); (2) violation of RICO Section 1962(c) (against the so-called "RICO Defendants"); (3) conspiracy to violate RICO (against the RICO Defendants); (4) "fraud – intentional misrepresentation reliance" (against the "Music Event Defendants"); (5) "negligent misrepresentation reliance" (against the "Music Event Defendants"); (6) breach of contract (against Avant Gardner); (4) breach of the covenant of good faith and fair dealing (against Avant Gardner), and; (7) violations of N.Y. GBL §§ 349 and 350 (against the "Music Event Defendants" and the "Real Estate Defendants"). (ECF No. 1, at 12-15).

**E.**   **The EZ Defendants Outlined Their Dismissal Arguments in a Pre-Motion Letter, And the Brockmole Plaintiffs Chose Not to Amend Their Pleading Any Further**

On February 15, 2024, the EZ Defendants served Plaintiffs' counsel with a pre-motion letter that, in accordance with then-assigned District Judge Victor Marrero's Individual Practices, summarized the reasons and controlling authorities that Defendants contend warrant dismissal of Counts I, II, III, IV, and VI of the ACAC. (*See*, Kennell Decl., at **Ex. 2**). Judge Marrero's Rules

required the Brockmole Plaintiffs to respond by letter within seven days (February 22, 2024), indicating whether they intended to make any further amendments or else stating the controlling authority to support their ACAC. But the Brockmole Plaintiffs provided no such response. Thus, the Brockmole Plaintiffs' opportunity for further amendment in response to the EZ Defendants' dismissal arguments expired.[6]

## LEGAL ARGUMENTS

The EZ Defendants now move to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim against Defendants Avant Gardner and Mr. Bildstein, and for a failure to sufficiently state a claim on Counts I, II, III, IV, and VI of the ACAC.

## I.       STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 556 U.S. at 678 (internal citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the

---

[6]      This matter was re-assigned to The Hon. Margaret M. Garnett on February 21, 2024 (*i.e.*, during the seven-day period to respond to the EZ Defendants' pre-motion letter), (*See*, ECF 02/21/2024 text-only NOTICE OF CASE REASSIGNMENT). While the Brockmole (and Avchukov) Plaintiffs asserted that the reassignment relieved them of any obligation to respond to the pre-motion letter, Judge Garnett's February 26, 2024 Order made clear that, in fact, "all prior orders, dates, and deadlines shall remain in effect notwithstanding the case's reassignment … ." (ECF No. 39, at 1).

assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp.*, 550 U.S. at 545.  Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

## II.     THE BROCKMOLE PLAINTIFFS HAVE NO PLAUSIBLE CLAIM AGAINST AVANT GARDNER FOR THE 2023 EZOO FESTIVAL, AND THEY FAIL TO ADEQUATELY PLEAD ANY CLAIM FOR CORPORATE OFFICER LIABILITY AGAINST MR. BILDSTEIN

Among the EZ Defendants, the Brockmole Plaintiffs named Avant Gardner and Jurgen Bildstein.  But Avant Gardner, contrary to the ACAC's allegations, had no ownership or control over the 2023 EZoo Festival.  And the pleading fails to allege, as required, that Mr. Bildstein "personally participate[d] in … or ha[d] actual knowledge of" any alleged wrongdoing.  All claims against Avant Gardner and Mr. Bildstein, therefore, should be dismissed.

First, the ACAC alleges Avant Gardner bears responsibility for the alleged wrongdoing at the 2023 EZoo Festival because Avant Gardner "is an owner, operator, organizer, [or] promoter of Electric Zoo Music Festival." (ACAC, at ¶ 18).  But in fact, as plainly demonstrated by the organizational documents for Defendant EZ Festivals—which indeed was the owner and operator of the EZoo Festival—Avant Gardner is *not* an "owner, operator, organizer [or] promoter" of the event, as alleged by the ACAC. (Kennell Decl., **Ex. 1**, at 1, 6).  As the ACAC itself concedes, Avant Gardner runs The Brooklyn Mirage concert venue, which had nothing to do with operating the 2023 EZoo Festival. (ACAC, at ¶ 11, 31).  Thus, there can be no claims against Avant Gardner for alleged wrongdoing involving the 2023 EZoo Festival, and Avant Gardner should be dismissed from the action.

Second, the Brockmole Plaintiffs' ACAC alleges EZ Festivals' CEO, Jurgen Bildstein, purportedly "owns and/or controls" the other EZ Defendant entities, and the Brockmole Plaintiffs make various conclusory assertions against Mr. Bildstein—but they allege *no facts* to support any of those assertions.

Under New York Law, a corporate officer generally cannot be liable for the acts of the corporation. *Gottehrer v. Viet-Hoa Co.*, 170 A.D.2d 648, 649 (2d Dep't 1991). More specifically, corporate officers and directors generally are not liable for the fraud, breach of contract, or other wrongdoing of the corporation unless they "personally participate in … or have actual knowledge of" the alleged wrongdoing. *Marine Midland Bank v. Russo Produce Co.*, 50 N.Y. 2d 31, 44 (N.Y. 1980). *See also, Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994). And in New York, corporate officers cannot be held personally liable on contracts of their corporations unless the executive purported to bind himself under the contract. *Stern v. H. DiMarzo, Inc.*, 77 A.D.3d 730, 730 (2d Dep't 2010).

The ACAC here merely alleges that Mr. Bildstein was "at the top of the enterprise structure," that he was one of the "operators of [the 2023 EZoo Festival]," and in total conclusory fashion, that he was "responsible for oversight of the operation and commission of predicate acts, and ha[s] directed other conspirators to take actions necessary to accomplish the overall aims of the criminal enterprise." (*Id.*, at ¶¶ 13, 18, 72.a, and 78). These assertions fail to allege any *facts* sufficient to support a contention that Mr. Bildstein "personally participate[d] in … or ha[d] knowledge of" any alleged wrongdoing. *Marine Midland Bank*, 50 N.Y.2d at 44. As such, because the ACAC lacks any allegation that Mr. Bildstein acted in any manner outside his corporate executive capacity, any claims against him individually should fail and must be dismissed.

11

**III.    THE RICO COUNTS FAIL TO SATISFY THE REQUIRED HEIGHTENED PLEADING STANDARD UNDER THE FEDERAL RULES AND OTHERWISE FAIL TO STATE A PLAUSIBLE CLAIM AGAINST THE EZ DEFENDANTS**

Just as the ACAC fails to allege plausible claims for liability against Avant Gardner or Mr. Bildstein altogether, the Brockmole Plaintiffs' pleading fails to adequately allege a plausible claim against the EZ Defendants (and the other named, but only recently or un-served Defendants) for purported RICO violations.  Counts I, II, and III of the ACAC purport to assert claims under the Racketeer Influenced and Corrupt Organizations Act (RICO)—specifically under 18 U.S.C. §§ 1962(a), 1962(c), and 1962(d).

RICO allegations are of no small moment.  Like here, courts should be especially wary in considering civil RICO claims, because "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996). "[C]ourts must always be on the lookout for the putative RICO case that is really 'nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.'" *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998), quoting *In re Integrated Resources Real Estate*, 850 F.Supp. 1105, 1148 (S.D.N.Y. 1993).

Examined closely, that is exactly what the Brockmole ACAC is—an ordinary breach of contract case clothed with ragged RICO allegations in an attempt to make this case far more than it really is or plausibly should be.

**A.    Count I (Section 1962(a) RICO) Fails to Allege a Plausible "Enterprise," and the ACAC's Assertions of Mail and Other Fraud Do Not Meet the Heightened Pleading Standards of Rule 9(b)**

To plead a cause of action under § 1962(a), "a plaintiff must allege (1) that a defendant received income from a pattern of racketeering activity; (2) invested that income in the acquisition

of a stake in, or establishment of, an enterprise distinct from the one from which the income was derived; and (3) that the plaintiff suffered an injury following from this reinvestment of racketeering income distinct from any injury suffered because of the commission of the original predicate acts of racketeering activity." *Leung v. Law*, 387 F.Supp.2d 105, 120 (E.D.N.Y. 2005), citing *Ouakine v. MacFarlaine,* 897 F.2d 75, 83 (2d Cir. 1990). A party alleging civil RICO under § 1962(a) is required to allege that the injury was caused by the investment of the racketeering proceeds, and not merely by the predicate acts. *In re Tether and Bitfinex Crypto Asset Litigation*, 576 F.Supp.3d 55, 127 (S.D.N.Y. 2021).

RICO defines "racketeering activity" to mean "any act or threat involving" an enumerated list of offenses "which is chargeable under State law and punishable by imprisonment for more than one year" or "any act which is indictable under" an enumerated list of "provisions of title 18, United States Code 18 U.S.C. § 1961(1)." *Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21-cv-10597-JPC, 2023 WL 374120, at *4 (S.D.N.Y. Jan. 24, 2023). As such, in order to sufficiently plead a violation of RICO, a complaint must adequately allege that the defendants engaged in "predicate acts" constituting racketeering activity—"that is, state or federal offenses enumerated in 18 U.S.C. § 1961(1)." *Id.*

### 1. The Brockmole ACAC's "Predicate Acts" Allegations of Wire and Other Fraud Are Not Alleged With Sufficient Particularity

According to the ACAC, the alleged "predicate acts" of the RICO conspiracy here involved "money laundering" and "mail and wire fraud." (ACAC, at ¶¶ 90-96). A complaint alleging mail or wire fraud as a predicate to civil racketeering claims must allege those predicate acts with the particularity required by Rule 9(b). *Paul Hobbs Imports, Inc.*, 2023 WL 374120, at *4. Fed.R.Civ.P 9(b) of course requires that, "[i]n alleging fraud …, a party must state with

particularity the circumstances constituting the fraud …"  The Brockmole Plaintiffs' pleading fails to do so.

As to the purported fraud of "money laundering," the ACAC alleges in pure conclusory fashion, "The Investment Defendants, upon information and belief, have received from the Music Event Defendants and/or the Real Estate Defendants, and continue to receive, deposit and spend more than $10,000 of proceeds generated from acts and conduct constituting predicate acts." (ACAC, at ¶ 92).  Nowhere else does the ACAC explain the "money laundering" conclusion or allege *any facts whatsoever* to describe the particular facts supposedly constituting "money laundering."

Similarly, the ACAC's assertions of "wire and mail fraud" allege nothing beyond "information and belief" or the threadbare recitals of claim elements.  To adequately plead mail and wire fraud as predicate acts, "a complaint 'must specify the statements it claims were false or misleading, give particularity as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017), citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999).  The ACAC here asserts the RICO Defendants "engaged in conduct constituting mail and wire fraud" by: (1) "using the internet to transmit materially false and misleading promotions soliciting customers" of the 2023 EZoo Festival and Avant Gardner events to get the customers "to buy tickets well beyond the legally permitted capacity"; and (2) using the RICO Defendants' "promotion of [the 2023 EZoo Festival] by misrepresenting material aspects of the show and using false representations about [the 2023 EZoo Festival] to solicit sales of after party tickets to Avant Gardner in connection with [the 2023 EZoo Festival]." (ACAC, at ¶¶ 95-96).  But while the ACAC offers *some* factual detail about what

14

and how the Brockmole Plaintiffs contend the EZ and other Defendants allegedly misrepresented aspects of the 2023 EZoo Festival and Avant Gardner shows, those allegations are not sufficient under Rule 9(b) to particularize the who, what, when, where, how, and why of the specific misrepresentations purportedly made to *these* Plaintiffs—*e.g.*, on what date(s) the supposed misrepresentations were made to any of the named Plaintiffs; what *exactly* was said or misrepresented, *etc*.

Lacking in specific and particularized allegations, the ACAC fails to allege "money laundering" or "mail and wire fraud" predicate acts to support a plausible RICO § 1962(a) claim, and therefore Count I of the ACAC should be dismissed.

### 2. The ACAC Does Not Allege a Plausible RICO "Enterprise" As Required, Where Supposedly Illegal Proceeds Were Used to Acquire the 2023 EZoo Festival

The ACAC also fails to adequately allege the "enterprise" element of a 1962(a) civil RICO claim.   While the Amended Complaint asserts the Defendants are an "association-in fact" enterprise, there are no specific allegations as to how the supposed "enterprise" is a separate entity acquired through money invested from the allegedly illegal activity. *Accord*, *Leung*, 387 F.Supp.2d at 120.  On this "enterprise" element, the ACAC summarily asserts, "The Defendants used and invested the proceeds of racketeering activity in the enterprise by taking the revenues earned from operation of the venues and investing same in concert events and [the 2023 EZoo Festival] which are part of the enterprise." (ACAC, at ¶ 109).

Read closely, all the ACAC alleges is that the 2023 EZoo Festival was owned and operated by a company whose principal owns other *legitimate* concert companies which sometimes cross-market to the festival's electronic music fans and which companies have investors who own the

real estate and venues where those concert companies operate.  While the ACAC criticizes how those other entertainment companies operate—for example, based solely on a newspaper article purporting to summarize leaked regulatory reporting, accusing Avant Gardner of operating its venues at over-sold capacity, (ACAC, at ¶¶ 33-34)—the ACAC fails to sufficiently allege how those alleged operational practices were criminally illegal or what or how any allegedly illegal proceeds were invested into the 2023 EZoo Festival.

This is the core problem with the Brockmole Plaintiffs' novel attempt to turn this garden variety breach of contract, ticket-refund class action into a vast criminal conspiracy.  It is not a criminal RICO "enterprise" to have distinct corporate entities for related business ventures—all doing their own thing while offering similar entertainment to the same fans, particularly where (as here) there is no serious, non-conclusory allegation that any of those ventures are engaging in *criminal* activity.

**B.      Count II (Section 1962(c) RICO) Likewise Fails to Allege the Predicate Acts of Mail and Other Fraud With the Required Specificity Under Rule 9(b)**

To plead a cause of action under RICO § 1962(c), the Brockmole Plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Paul Hobbs Imports, Inc.*, 2023 WL 374120, at *4; citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). These elements "must be established as to each individual defendant." *Paul Hobbs Imports, Inc.*, 2023 WL 374120, at *4.

As is the case with Count I, Count II of the ACAC is subject to the heightened pleading requirements of Rule 9(b).  The ACAC here alleges that the Defendants "engaged in multiple predicate acts since 2018," purportedly including "money laundering" and "mail and wire fraud"

(*See,* ACAC at ¶¶ 84, 91-96).  Count II further alleges that "[e]ach of the RICO Defendants has engaged in multiple predicate acts … [which] constitutes a pattern of racketeering activity" (*Id.*, at ¶ 117).  Again, none of the alleged predicate acts of racketeering activity are asserted with the specificity required by Rule 9(b) and Count II (and the ACAC overall) wholly fails to allege how, or even *that*, each Defendant participated in the supposed predicate acts of racketeering activity. Accordingly, Count II of the ACAC fails and should be dismissed.

### C.   Count III (Section 1962(d) Conspiracy) Fails to Plausibly Allege With Particularity Any "Agreement" Among the Defendants

Count III of the ACAC purports to allege a claim for conspiracy to violate RICO against the so-called "RICO Defendants." (ACAC, at ¶¶ 119-126).  Section 1962(d) under RICO "makes it unlawful to conspire to violate any of the other three prohibitions" under § 1962, including sections (a) and (c). *In re Tether and Bitfinex Crypto Asset Litigation*, 576 F.Supp.3d at 115.  Thus, because as explained above, the ACAC fails to state plausible RICO claims here, it necessarily follows that there could be no claim for conspiracy to commit RICO violations which are not sufficiently and plausibly pleaded.

Nevertheless, a plaintiff asserting a RICO conspiracy must assert "(1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator knowingly participated in the same." *Black v. Ganieva*, 619 F.Supp.3d 309, 348 (S.D.N.Y. 2022).  "[T]he requirements for RICO[] conspiracy charges … [include that a] 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive ***criminal*** offense, but it suffices that [she has adopted] the goal of furthering or facilitating the criminal endeavor.'" *Baisch v. Gallina*, 346 F.3d 366, 376-77 (2d Cir. 2003) (emphasis added), quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997).

Count III stands on nothing more than the Brockmole Plaintiffs' rote recitation of the elements of this claim, including conclusory assertions that the EZ and other Defendants "knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity …" (ACAC, at ¶¶ 121-123).  This is simply not enough.  "Conclusory allegations that 'all of the defendants conspired among themselves to further the scheme to defraud' and 'knowingly and willingly participated in the conspiracy' are insufficient." *Paul Hobbs Imports, Inc.*, 2023 WL 374120, at *13, quoting *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.Supp.2d 432, 453 (S.D.N.Y. 2004).

Moreover, the ACAC does not sufficiently allege that each Defendant "knew about and agreed to facilitate" a pattern of racketeering activity. *Accord*, *Black*, 619 F.Supp.3d at 348.  The ACAC's utterly conclusory allegations of an "agreement" among the various Defendants, (*see*, ACAC at ¶¶ 110-111, 120-123), fail to allege, with any specificity, actual *facts* to support that claim.

The Brockmole Plaintiffs' wild claims of RICO violations and RICO conspiracy all fail and should be dismissed in their entirety and with prejudice.

## IV.   PLAINTIFFS' FRAUD (COUNT IV) AND GOOD FAITH AND FAIR DEALING CLAIMS (COUNT VI) MUST BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM

Count V of the ACAC alleges a claim for breach of contract, asserting the 2023 EZoo Festival "tickets promise[d] unconditional guaranteed entry" and Avant Gardner allegedly breached that agreement "by selling tickets to oversold events at Avant Gardner and by cancelling the [2023 EZoo Festival] Friday show on the date of the concert, hours before it was initially scheduled to begin and by barring or delaying Plaintiffs and other class members from entering

the Saturday or Sunday shows." (ACAC, at ¶¶ 133, 135).  While as shown above, Avant Gardner did not own the EZoo Festival and did not issue concertgoers their tickets, the EZ Defendants are not challenging on this motion the sufficiency of the breach of contract claim.  But two other Counts of the ACAC are subject to dismissal, because they are based on the same alleged contractual duties or seek the same relief as the breach of contract Count, and therefore, those two tag-along Counts are duplicative.

First, Count IV of the ACAC purports to allege a claim for "fraud – intentional misrepresentation reliance."[7] (ACAC, at ¶¶ 128-131).  But a fraud or intentional misrepresentation claim that is duplicative of a breach of contract claim must be dismissed. *Bridgestone v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996) ("A fraud claim will not survive if it merely restates a claim for breach of contract.").  To maintain a fraud claim alongside a breach of contract claim, a Plaintiff must: (1) "demonstrate a legal duty separate from the duty to perform under the contract"; (2) "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract"; or (3) "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id.* at 20.

According to the ACAC, the EZ Defendants "falsely represented that they would present shows on each of the three festival days and that ticket holders were entitled to enter the grounds to see the shows" and that "tickets to Avant Gardner events guaranteed admission but tickets sold beyond permitted capacity were at best 'standby' tickets." (ACAC, at ¶ 128).  But that is essentially the same assertion as in the breach of contract Count, where the Brockmole Plaintiffs contend

---

[7]    The Second Circuit has recognized that "[t]he elements of common-law fraud and intentional misrepresentation under New York law are the same." *Indep. Order of Foresters v. Donald Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998).

Avant Gardner "promise[d] unconditional guaranteed entry" but allegedly breached "by selling tickets to oversold events at Avant Gardner and by cancelling the [2023 EZoo Festival] Friday show" and limiting entry for the Saturday and Sunday shows. (*Id.*, at ¶¶ 133, 135). Because the "fraud – intentional misrepresentation reliance" claim at Count IV is wholly duplicative of the breach of contract claim at Count V, Count IV should be dismissed with prejudice.

Second, Count VI of the ACAC attempts to allege a cause of action for breach of the implied covenant of good faith and fair dealing. (ACAC, at ¶¶ 138-139). Similar to a duplicative claim for fraud, "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it is based on the same facts as the breach of contract claim." *Washington v. Kellwood Company*, No. 05-cv-10034-DAB, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009). In order to succeed, a plaintiff must show "legal duty separate and apart from contractual duties." *Id*.

The ACAC here expressly alleges its duplicative nature, where the Brockmole Plaintiffs contend, "Plaintiffs entered into contracts with Defendants to provide a music festival experience in exchange for money" and "in consideration for Defendants' promise to provide accommodations, vendors, and A-level musical talent." (ACAC, at ¶ 138). That, of course, parrots Count V's contractual duty allegations and is plainly a repeat of the breach of contract claim. Count VI, therefore, also should be dismissed with prejudice.

## V. THE BROCKMOLE PLAINTIFFS HAD PLENTY OF OPPORTUNITY TO REFINE THEIR PLEADING, AND HAVING WAIVED THE OPPORTUNITY TO AMEND THE ACAC, NO FURTHER AMENDMENTS SHOULD BE ALLOWED

At this point, the Brockmole Plaintiffs have had enough chances to fine-tune their pleading, particularly in response to the EZ Defendants' previous pre-motion letter summarizing the basis of this motion.

The Brockmole Plaintiffs filed their original Complaint in this action on September 13, 2023. (ECF No. 1).  On December 21, 2023, with leave of the Court, the Brockmole Plaintiffs filed their ACAC, greatly expanding their claims and theories. (ACAC, generally).  Upon extension granted by the Court, (ECF No. 34), on February 15, 2024, the Defendants served the Brockmole Plaintiffs with the required pre-motion letter, summarizing the reasons and controlling authorities that Defendants contend warrant dismissal of Counts I, II, III, IV, and VI of the ACAC. (*See*, Kennell Decl., at **Ex. 2**).

Under Judge Marrero's Rules, the Brockmole Plaintiffs had a final opportunity to amend— that is, by letter response within seven days, the Brockmole Plaintiffs were to indicate whether they intended to make any further amendments (or else stating the controlling authority to support their ACAC).  The Brockmole Plaintiffs chose not to serve a responsive letter—even though Judge Garnett's February 26, 2024 Order made clear that, in fact, "all prior orders, dates, and deadlines shall remain in effect notwithstanding the case's reassignment … ." (ECF No. 39, at 1).  The Brockmole Plaintiffs accordingly waived any opportunity for further amendment.

Thus, the Court should grant the EZ Defendants' motion to dismiss Avant Gardner and Mr. Bildstein from this action entirely and dismiss Counts I, II, III, IV, and VI of the ACAC, in their entirety and with prejudice.

21

**<u>CONCLUSION</u>**

The Brockmole Plaintiffs' Amended Class Action Complaint alleges a vast wide array of purported claims against the EZ Defendants, many of which are conclusory, unsubstantiated, and not actionable under law.  The claims against Avant Gardner fail because it was not, as alleged, an owner or operator of the 2023 EZoo Festival.  The claims against EZ Festivals' CEO Jurgen Bildstein fail to sufficiently allege "personal participation" and "actual knowledge" of the entities' purported wrongdoing to maintain an individual corporate officer liability claim.  The RICO Counts (I, II, and III) fail to sufficiently plead those claims, especially with the required particularity of Rule 9(b).  And the fraud (Count IV) and good faith and fair dealing (Count VI) claims are duplicative of the breach of contract claim.

For all those reasons, the EZ Defendants respectfully request that this Court dismiss this action against Avant Gardner and Mr. Bildstein entirely and with prejudice and dismiss Counts I, II, III, IV and VI of the ACAC with prejudice, and because the Brockmole Plaintiffs chose to waive any further refining of their pleading, with no opportunity for another amendment.

Dated: March 21, 2024
      New York, New York

Respectfully submitted,

KAUFMAN DOLOWICH, LLP

By:   */s/ Patrick M. Kennell*
      Patrick M. Kennell
       pkennell@kaufmandolowich.com
      Kathleen A. Mullins
       kathleen.mullins@kaufmandolowich.com
      40 Exchange Place – 20th Floor
      New York, New York 10005
      Tel:  (212) 485-9600

      *Attorneys for Defendants*
      EZ FESTIVALS, LLC, AVANT
      GARDNER, LLC, MADE EVENT LLC,
      and JURGEN BILDSTEIN