IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDRA AVCHUKOV, QUENTIN CHAPPAT, SANDRA MAESTRA PEREIRA, KRIS IYER, ANTHONY PALIE, DAKOTA BEDELL, CARL CORBO, ANNABEL GOULD, DOLORES THOMPSON, BRIDGETTE WINKELMANN, BILLY TING, DUOC VO, GARRY HUANG, JEFFREY HANG, JOSHUA CHIN, and WILLY NGO, on behalf of themselves and all others similarly situated, | Civil Action No. 1:23-cv-08106-MMG |
| Plaintiffs, | **(Oral Argument Requested)** |
| - against - | |
| AVANT GARDNER, LLC, EZ FESTIVALS, LLC, MADE EVENT, LLC and JURGEN BILDSTEIN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS CERTAIN DEFENDANTS
AND COUNTS OF THE AVCHUKOV COMPLAINT**

Respectfully submitted,

KAUFMAN DOLOWICH, LLP
40 Exchange Place – 20th Floor
New York, New York 10005
Phone: (212) 485-9600

By:   Patrick M. Kennell
        pkennell@kaufmandolowich.com
        Kathleen A. Mullins
        kathleen.mullins@kaufmandolowich.com
        *Attorneys for Defendants*
        AVANT GARDNER, LLC, EZ
        FESTIVALS, LLC, MADE EVENT, LLC
        and JURGEN BILDSTEIN

Dated: March 21, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS AND ALLEGATIONS ........................................................ 3

    A. The EZoo Festival Is Wholly Owned by Defendant EZ Festivals, LLC, and None of the Other Entities Named Own or Operate the Festival ........................................................... 3

    B. The 2023 EZoo Festival Suffered Permitting and Construction Setbacks, Leading to Cancellation of the Friday Session and Delay of the Saturday Session ............................. 4

    C. Plaintiffs Filed Separate Class Action Lawsuits Within Days of the 2023 EZoo Festival's Conclusion .......................................................................................................................... 5

    D. The Avchukov, Palie and Ting Plaintiffs Filed a Single Consolidated Class Action Complaint in Amendment of Their Original Pleadings ........................................................ 6

    E. Defendants Outlined Their Dismissal Arguments in a Pre-Motion Letter, And the Avchukov Plaintiffs Chose Not to Amend Their Pleading Any Further ............................. 6

LEGAL ARGUMENTS ................................................................................................... 7

    I. STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS ........................................ 7

    II. THE AVCHUKOV PLAINTIFFS HAVE NO PLAUSIBLE CLAIM AGAINST AVANT GARDNER FOR THE 2023 EZOO FESTIVAL, AND THEY FAIL TO ADEQUATELY PLEAD ANY CLAIM FOR CORPORATE OFFICER LIABILITY AGAINST MR. BILDSTEIN ............................................................................................... 8

    III. THE NEGLIGENT MISREPRESENTATION COUNT FAILS TO ADEQUATELY ALLEGE, AS REQUIRED, A "SPECIAL OR PRIVITY-LIKE RELATIONSHIP" ...... 11

    IV. PLAINTIFFS' UNJUST ENRICHMENT, FRAUD, GOOD FAITH AND FAIR DEALING, AND PROMISSORY ESTOPPEL CLAIMS MUST BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM ..................................... 12

    A. The Unjust Enrichment Count is Based on Defendants Allegedly Being "Paid Consideration by Plaintiffs," Making This Count Duplicative of the Contract Count 13

    B. The Fraud Count Alleges the Same Purported Broken Promises About the 2023 EZoo Festival as the Contract Claim, Making The Fraud Count Duplicative of the Contract Count ................................................................................................................................. 13

C.  The Good Faith and Fair Dealing Count Alleges Defendants Did Not Honor the "Benefit of the Bargain," Making This Count Duplicative of the Contract Count..... 15

D.  The Promissory Estoppel Count Alleges the Same Purported Undertakings and Promises as Set Out in the Contract Claim, Making This Count Duplicative of the Contract Count ........................................................................................................ 15

V.  THE AVCHUKOV PLAINTIFFS HAD PLENTY OF OPPORTUNITY TO REFINE THEIR PLEADING, AND HAVING WAIVED THE OPPORTUNITY TO AMEND THE CCAC, NO FURTHER AMENDMENTS SHOULD BE ALLOWED.................. 16

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*
   910 F. Supp. 2d 543 (S.D.N.Y. 2012)......................................................... 11

*Ashcroft v. Iqbal*
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...................................... 7, 8

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)......................................... 7

*Bridgestone v. Recovery Credit Services, Inc.*
   98 F.3d 13 (2d Cir. 1996)............................................................... 13, 14

*Clark-Fitzpatrick, Inc. v. Long Island R.R.*
   70 N.Y.2d 382 (N.Y. 1987) .............................................................. 13

*Cohen v. Koenig*
   25 F.3d 1168 (2d Cir. 1994)................................................................ 9

*Dallas Aerospace, Inc. v. CIS Air Corp.*
   352 F.3d 775 (2d Cir. 2003)............................................................... 11

*Four Finger Art Factory, Inc. v. Dinicola*
   No. 99-cv-1259, 2000 WL 145466 (S.D.N.Y. Feb. 9, 2000) ................................. 16

*Global Network Commc'ns, Inc. v. City of New York*
   458 F.3d 150 (2d Cir. 2006).............................................................. 3

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*
   8 F.Supp.3d 467 (S.D.N.Y. 2014) ......................................................... 13

*Gottehrer v. Viet-Hoa Co.*
   170 A.D.2d 648 (2d Dep't 1991) .......................................................... 9

*In re Tops Holding II Corp.*
   646 B.R. 617 (Bankr. S.D.N.Y. 2022) ..................................................... 3

*Izquierdo v. Mondelez Int'l, Inc.*
   No. 16-cv-04697-CM, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ............................. 11, 12

*Kaplan Group Inv. v. A.S.A.P. Logistics Ltd.*
   No. 22-cv-7326-JPO, 2023 WL 6214909 (S.D.N.Y. Sept. 25, 2023) ......................... 8

*Marine Midland Bank v. Russo Produce Co.*
  50 N.Y. 2d 31 (N.Y. 1980) ................................................................................ 9, 10

*Matter of Morris v. New York State Dept. of Taxation & Fin.*
  82 N.Y.2d 135 (N.Y. 1993) .................................................................................. 8

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*
  418 F.3d 168 (2d Cir. 2005) ............................................................................... 13

*Reynolds v. Lifewatch, Inc.*
  136 F.Supp.3d 503 (S.D.N.Y. 2015) .................................................................... 8

*Roth v. Jennings*
  489 F. 3d 499 (2d Cir. 2007) ................................................................................ 3

*Stern v. H. DiMarzo, Inc.*
  77 A.D.3d 730 (2d Dep't 2010) ........................................................................... 9

*TNS Holdings, Inc. v. MKI Sec. Corp.*
  92 N.Y. 2d 335 (N.Y. 1998) .............................................................................. 8-9

*TufAmerica, Inc. v. Diamond*
  968 F.Supp.2d 588 (S.D.N.Y. 2013) .................................................................... 3

*Washington v. Kellwood Company*
  No. 05-cv-10034-DAB, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) .................... 15

## RULES

Fed.R.Civ.P. 12(b)(6).......................................................................................... 7

## PRELIMINARY STATEMENT

This is a putative class action lawsuit, originally brought by concertgoers of the 2023 Electric Zoo (EZoo) Festival on Randall's Island in New York City who claim their tickets were not honored for the entirety of the planned three-day annual electronic music festival or that the conditions of last year's festival were not what they expected when they bought their tickets.  By this Rule 12(b)(6) motion to dismiss, Defendants Avant Gardner, LLC, EZ Festivals, LLC, Made Event, LLC, and Jurgen Bildstein seek dismissal of Avant Garnder and Mr. Bildstein completely, as well as of the unjust enrichment, fraud, negligent misrepresentation, "good faith and fair dealing," and promissory estoppel Counts (3, 5, 6, 7, and 8) of the Avchukov Plaintiffs' Consolidated Class Action Complaint (CCAC).

Because Defendant Avant Gardner was not an "owner" or "operator" of the 2023 EZoo Festival as alleged in the CCAC, it is not a proper party to this action and should be dismissed. The CCAC also fails to sufficiently allege any individual liability on the part of individual Defendant Jurgen Bildstein, who is a principal in Defendant EZ Festivals, the entity that actually owns and operates the EZoo Festival (which was previously owned by Defendant Made Event, a now-defunct entity), warranting dismissal against Mr. Bildstein.

Improper parties aside, five of the eight Counts of the CCAC fail to state a claim in any event.  The negligent misrepresentation Count (6) fails to sufficiently allege the required "special or privity-like relationship," and the claims for unjust enrichment (Count 3), fraud(Count 5), good faith and fair dealing (Count 7), and promissory estoppel (Count 8) should be dismissed as they are duplicative of the Avchukov Plaintiffs' breach of contract claim.  Accordingly, those claims should be dismissed with prejudice.

Like the companion Brockmole Plaintiffs, the Avchukov Plaintiffs have had *plenty* of opportunity to amend and fine-tune their pleadings, including from their original complaints that asserted claims sounding in breach of contract, fraud, negligence, misrepresentation, deceptive practices, unjust enrichment, and promissory estoppel, (No. 23-cv-08197; No. 23-cv-08422 ECF No. 1; and No. 23-cv-09694 ECF No. 1, ex. 1), to the Ting Plaintiffs' amended complaint, (No. 23-cv-09694 ECF No. 7), to the consolidated Avchukov CCAC.  And like the Brockmole Plaintiffs, the Avchukov Plaintiffs specifically had an opportunity to amend their pleading in response to Defendants' February 15, 2024 pre-motion letter—which further amendment, if any, the Individual Rules of originally-assigned District Judge Marrero required the Avchukov Plaintiffs to announce by February 22, 2024.  The Avchukov Plaintiffs chose not to further amend in response to Defendants' dismissal arguments, and they should not be allowed to seek any further amendment at this late stage.

For all those reasons, the Court should grant Defendants' motion to dismiss Avant Gardner and Mr. Bildstein and to dismiss Counts 3, 5, 6, 7, and 8 of the CCAC in their entirety and with prejudice.

## STATEMENT OF FACTS AND ALLEGATIONS[1]

The EZoo Festival is a three-day music festival held at Randall's Island Park in New York City every Labor Day weekend. (*See*, ECF No. 26, "CCAC," at ¶¶ 1, 3, 47-48). The 2023 festival was scheduled to be held on Friday, September 1, 2023, Saturday, September 2, 2023, and Sunday, September 3, 2023. (*Id.*, at ¶ 47). Each of the named Plaintiffs are 16 concertgoers from around the country who allegedly bought tickets for one, two, or all three days of the 2023 EZoo Festival. (*Id.*, at ¶¶ 10-25).

### A.   The EZoo Festival Is Wholly Owned by Defendant EZ Festivals, LLC, and None of the Other Entities Named Own or Operate the Festival

As alleged by the CCAC, Defendant EZ Festivals owned and operated the 2023 EZoo Festival, and Defendant Made Event LLC allegedly owns EZ Festivals—but Made Event did not own or operate the festival. (CCAC, at ¶ 35-36; *see also*, Declaration of Patrick M. Kennell, "Kennell Decl.," **Ex. 1** at 1, 6). Defendant Jurgen Bildstein is alleged to be the "owner" of EZ Festivals, Made Event, and the 2023 EZoo Festival. (CCAC, at ¶ 2). While the CCAC incorrectly

---

[1]      As is necessary on a Rule 12(b)(6) motion to dismiss, Defendants refer only to the "facts" as alleged in the CCAC, any exhibits attached or incorporated by reference, matters of public record or of which the Court may take judicial notice, and any document "upon which [the complaint] solely relies and which is integral to the complaint." *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).  A document generally should be considered as "integral" where, for example, "it is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint.'" *In re Tops Holding II Corp.*, 646 B.R. 617, 647 (Bankr. S.D.N.Y. 2022), quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, controls, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F.Supp.2d 588, 592 (S.D.N.Y. 2013).

alleges otherwise, Defendant Avant Gardner, LLC is *not*, in fact, an "owner" of EZ Festivals or an operator of the EZoo Festival. (CCAC, at ¶¶ 2, 38-39; Kennell Decl., **Ex. 1**, at 1, 6).[2]

B.      **The 2023 EZoo Festival Suffered Permitting and Construction Setbacks, Leading to Cancellation of the Friday Session and Delay of the Saturday Session**

First established in 2009, the Electric Zoo Festival has become one of New York City's largest and most well-known music festivals, featuring top performers and artists in electronic music from around the world. (CCAC, at ¶ 48).  The EZoo Festival is regulated and overseen by the Randall's Island Park Authority (RIPA) and various New York City agencies, requiring various permits to operate. (*Id*., at ¶¶ 61, 70).

For the 2023 EZoo Festival, EZ Festivals unfortunately lost a full day of construction and set-up because of supply chain and weather issues, resulting in non-issuance of permits from NYC authorities for the main stage in time. (CCAC, at ¶¶ 59, 70).  As a result of those unavoidable construction and permitting delays, and at the direction of officials with RIPA, the NYC Parks Department and the FDNY, EZ Festivals had no choice but to notify ticketholders that the Friday September 1st EZoo performances were cancelled and to delay by two hours the start of the Saturday September 2nd performances. (CCAC, at ¶¶ 5, 68).   But the remaining Saturday September 2nd and Sunday September 3rd EZoo performances went forward. (*Id*., at ¶¶ 68, 88).

---

[2]      Avant Gardner is the owner and operator of several Brooklyn venues which have nothing to do with the EZoo Festival.  For example, as the CCAC acknowledges, Avant Gardner owns and operates The Brooklyn Mirage, a premier and unrivaled event space and entertainment venue located in Brooklyn, New York. (CCAC, at ¶ 37; *see also*, https://www.avant-gardner.com/the-brooklyn-mirage.).

On the evening of the Sunday September 3rd performances, however, EZ Festivals was informed by New York City officials that the event had reached capacity and that no further entries would be permitted. (CCAC, at ¶¶ 90-91.  The Avchukov Plaintiffs allege that the Defendants oversold approximately 7,000 tickets to the 2023 EZoo Festival, 17% above its capacity of 42,500, and that concertgoers' experiences were "marred by an incredible amount of overcrowding at each and every stage, as the number of attendees greatly surpassed the number of people each stage was capable of accommodating." (*Id.*, at ¶¶ 98-99, 101.  Unfortunately, a small group of concertgoers who were held at the gates made the ill-advised decision, as described in the CCAC, to "'rush[] the gate,' pushing past and overwhelming the understaffed security and entering the event over their objections." (*Id.*, at ¶ 94).

### C.      Plaintiffs Filed Separate Class Action Lawsuits Within Days of the 2023 EZoo Festival's Conclusion

Within days of the end of the 2023 EZoo Festival, many of those named Plaintiffs now making up the Avkuchov group filed separate putative class action lawsuits, including:

- *Avkuchov, et al. v. Avant Gardner LLC, et al* (No. 23-cv-08197-VM).  On September 16, 2024, plaintiffs in *Avchukov* filed a Class-Action Complaint asserting purported claims for (1) deceptive practices under N.Y. GBL § 349; (2) breach of contract, and; (3) unjust enrichment. (*See*, No. 23-cv-08197, ECF No. 1, at 12-14).

- *Palie, et al. v. EZ Festivals LLC, et al*. (No. 23-cv-08422).  On September 22, 2023, plaintiffs in *Palie* filed a Class Action Complaint asserting purported claims for (1) negligence; (2) gross negligence; (3) fraud; (4) negligent misrepresentation; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; (7) unjust enrichment, and; (8) deceptive practices under N.Y. GBL § 349. (*See*, No. 23-cv-08422, ECF No. 1, at 34-48).

- *Ting, et al. v. Avant Gardner, LLC, et al.*, (Index No. 654897/2023; No. 23-cv-09694).  On October 5, 2023, the original plaintiffs in *Ting* filed a Class Action Complaint in New York state court, alleging purported claims for (1) deceptive practices under N.Y. GBL § 349; (2) false advertising under

N.Y. GBL § 350; (3) fraud; (4) negligence and gross negligence; (5) breach of contract; (6) promissory estoppel, and; (7) unjust enrichment. (*See*, No. 23-cv-09694, ECF No. 1, ex. 1, at 26-35). Defendants removed that state court action to this Court on November 3, 2023, noting its relatedness to the *Avchukov* and *Palie* (and first-filed *Brockmole*) actions pending before District Judge Marrero. (No. 23-cv-09694, ECF No. 1). On November 15, 2023, the *Ting* plaintiffs filed a "Class Action Amended Complaint," purporting to add newly named plaintiffs and assert the same seven counts as their original state court pleading. (ECF No. 7).

### D.  The Avchukov, Palie and Ting Plaintiffs Filed a Single Consolidated Class Action Complaint in Amendment of Their Original Pleadings

Upon consent of Defendants and leave of the Court, on December 26, 2023, the *Avchukov-Palie-Ting* group of Plaintiffs filed their Consolidated Class Action Complaint (CCAC), with Alexandra Avchukov listed as the first-named Plaintiff. (ECF No. 26). The CCAC purports to assert the following causes of action: (1) deceptive practices under N.Y. GBL § 349; (2) breach of contract; (3) unjust enrichment; (4) false advertising under N.Y. GBL § 350; (5) fraud; (6) negligent misrepresentation; (7) breach of the covenant of good faith and fair dealing, and; (8) promissory estoppel.

### E.  Defendants Outlined Their Dismissal Arguments in a Pre-Motion Letter, And the Avchukov Plaintiffs Chose Not to Amend Their Pleading Any Further

On February 15, 2024, Defendants served the Avchukov Plaintiffs' counsel with a pre-motion letter that, in accordance with then-assigned District Judge Victor Marrero's Individual Practices, summarized the reasons and controlling authorities that Defendants contend warrant dismissal of Counts 3, 5, 6, 7, and 8 of the CCAC. (*See*, Kennell Decl., at **Ex. 2**). Judge Marrero's Rules required the Avchukov Plaintiffs to respond by letter within seven days (February 22, 2024), indicating whether they intended to make any further amendments or else stating the controlling authority to support their CCAC. But the Avchukov Plaintiffs provided no such response. Thus,

the Avchukov Plaintiffs' opportunity for further amendment in response to Defendants' dismissal arguments expired.[3]

## LEGAL ARGUMENTS

Defendants now move to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim against Defendants Avant Gardner and Mr. Bildstein, and for a failure to sufficiently state a claim on Counts 3, 5, 6, 7, and 8 of the CCAC.

## I.     STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 556 U.S. at 678 (internal citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp.*, 550 U.S. at 545.  Deciding whether a complaint states a plausible claim is "a context-specific task that requires

---

[3]      This matter was re-assigned to The Hon. Margaret M. Garnett on February 21, 2024 (*i.e.*, during the seven-day period to respond to Defendants' pre-motion letter), (*See*, ECF 02/21/2024 text-only NOTICE OF CASE REASSIGNMENT).   While the Avchukov (and Brockmole) Plaintiffs asserted that the reassignment relieved them of any obligation to respond to the pre-motion letter, Judge Garnett's February 26, 2024 Order made clear that, in fact, "all prior orders, dates, and deadlines shall remain in effect notwithstanding the case's reassignment … ." (ECF No. 39, at 1).

the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

## II. THE AVCHUKOV PLAINTIFFS HAVE NO PLAUSIBLE CLAIM AGAINST AVANT GARDNER FOR THE 2023 EZOO FESTIVAL, AND THEY FAIL TO ADEQUATELY PLEAD ANY CLAIM FOR CORPORATE OFFICER LIABILITY AGAINST MR. BILDSTEIN

Among the various Defendants, the Avchukov Plaintiffs named Avant Gardner and Jurgen Bildstein. But Avant Gardner, contrary to the CCAC's allegations, had no ownership or operation of the 2023 EZoo Festival. And as required, the pleading fails to allege, beyond a single conclusory sentence, that Mr. Bildstein "personally participate[d] in … or ha[d] actual knowledge of" any alleged wrongdoing. All claims against Avant Gardner and Mr. Bildstein, therefore, should be dismissed.

First, the CCAC alleges that Avant Gardner bears responsibility for the alleged wrongdoing at the 2023 EZoo Festival because Avant Gardner "is the managing member with majority ownership interest of Made Event, LLC, which is the managing member with majority ownership interest of EZ Festivals, LLC" and "Avant Gardner, Made Event, EZ Festivals, and the Electric Zoo brand are all controlled by a single owner: Bildstein." (CCAC, at ¶¶ 30, 45).[4] But in fact, as

---

[4] The CCAC alleges "all Defendants are alter egos of one another" and both EZ Festivals and Made Event are "simply alter egos of Avant Gardner." (CCAC, at ¶¶ 30, 44). Those conclusory allegations are woefully insufficient to pierce the corporate veil. Indeed, "[t]he standard for veil-piercing is 'very demanding such that piercing the corporate veil is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss.'" *Kaplan Group Inv. v. A.S.A.P. Logistics Ltd.*, No. 22-cv-7326-JPO, 2023 WL 6214909, at *5 (S.D.N.Y. Sept. 25, 2023), quoting *Reynolds v. Lifewatch, Inc.*, 136 F.Supp.3d 503, 525 (S.D.N.Y. 2015). *See also, Matter of Morris v. New York State Dept. of Taxation & Fin.*, 82 N.Y.2d 135, 141 (N.Y. 1993) ("To pierce the corporate veil, plaintiff must show that '(1) the owners exercised complete domination of the corporation in respect of the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'"); and *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.

plainly demonstrated by the organizational documents for Defendant EZ Festivals—which indeed was the owner and operator of the EZoo Festival and which is wholly owned by AGDP Holdings Inc., a completely distinct entity (and one not named by the Avchukov Plaintiffs)—Avant Gardner is ***not*** an owner or responsibility party of the event, flatly contradicting the CCAC. (Kennell Decl., **Ex. 1**, at 1, 6).  As the CCAC itself concedes, Avant Gardner runs The Brooklyn Mirage concert venue, which had nothing to do with operating the 2023 EZoo Festival. (CCAC, at ¶ 37).  Thus, there can be no claims against Avant Gardner for alleged wrongdoing involving the 2023 EZoo Festival, and Avant Gardner should be dismissed from the action.

Second, the Avchukov Plaintiffs' CCAC alleges EZ Festivals' CEO, Jurgen Bildstein, is purportedly an "owner" of the other Defendant entities, and the Avchukov Plaintiffs make various conclusory assertions against Mr. Bildstein—but they allege ***no factual support*** for any of those assertions. (CCAC, at ¶¶ 2, 45-46, 102-104).  Under New York Law, a corporate officer generally cannot be liable for the acts of the corporation. *Gotteher v. Viet-Hoa Co.*, 170 A.D.2d 648, 649 (2d Dep't 1991).  More specifically, corporate officers and directors generally are not liable for the fraud, breach of contract, or other wrongdoing of the corporation unless they "personally participate in … or have actual knowledge of" the alleged wrongdoing. *Marine Midland Bank v. Russo Produce Co.*, 50 N.Y. 2d 31, 44 (N.Y. 1980).  *See also, Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994).  And in New York, corporate officers cannot be held personally liable on contracts of their corporations unless the executive purported to bind himself under the contract. *Stern v. H. DiMarzo, Inc.*, 77 A.D.3d 730, 730 (2d Dep't 2010).

---

2d 335, 339 (N.Y. 1998) (emphasis added) ("Those seeking to pierce a corporate veil of course ***bear a heavy burden*** …").

The CCAC here alleges Mr. Bildstein is the "single owner" and controller of EZ Festivals, Made Event, and Avant Gardner, and that he "*personally* directed and/or approved the overselling and other dangerous and fraudulent conduct herein complained of." (CCAC, at ¶¶ 45-46) (emphasis in original).  Notwithstanding that documents integral to the CCAC's allegations flatly contradict the "single owner" theory, (*see*, Kennell Decl., **Ex. 1**), the allegation that Mr. Bildstein "personally directed and/or approved" has zero, non-conclusory factual detail to support it. Elsewhere in the CCAC, the Avchukov Plaintiffs assert Mr. Bildstein "had the final say over all operations of the Electric Zoo festival," and in that way, he "personally directed or authorized more tickets to be sold than could be legally accommodated" and "personally directed or authorized the public announcements and responses of Electric Zoo." (CCAC, at ¶¶ 102-104).  But the Avchukov Plaintiffs offer no factual allegations to support those conclusions, and in fact, contradict the "final say" assertion where they otherwise allege and concede in the CCAC that operation of the 2023 EZoo Festival was subject to the "final say" of RIPA and the New York City permit-issuing agencies. (*Id*., at ¶¶ 61, 70).  In other words, while using the key elemental phrase "personally," the CCAC fails to allege any *facts* sufficient to support a contention that Mr. Bildstein "personally participate[d] in … or ha[d] knowledge of" any alleged wrongdoing. *Marine Midland Bank*, 50 N.Y.2d at 44.  As such, because the CCAC lacks any allegation that Mr. Bildstein acted in any manner outside his corporate executive capacity, any claims against him individually should fail and must be dismissed.

III.   **THE NEGLIGENT MISREPRESENTATION COUNT FAILS TO ADEQUATELY ALLEGE, AS REQUIRED, A "SPECIAL OR PRIVITY-LIKE RELATIONSHIP"**

In addition to naming improper parties, the CCAC purports to allege a claim for negligent misrepresentation (Count 6), but the claim as pleaded fails to assert the required "special or privity-like relationship." (CCAC, at ¶¶ 405-412).

For a cause of action premised on negligent misrepresentation, a plaintiff must allege: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 910 F. Supp. 2d 543, 546 (S.D.N.Y. 2012). Importantly to the dynamic between concertgoers and Defendants here, to succeed on a negligent misrepresentation claim, there must be "a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003). Further, "the vast majority of arms-length commercial transactions, which are comprised of 'casual statements and contacts,' will not give rise to negligent misrepresentation claims." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697-CM, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016).

The Avchukov Plaintiffs here allege that "Defendants were uniquely and solely positioned to provide accurate information concerning … the Electric Zoo festival …" (CCAC, at ¶ 408). But neither that allegation nor anything else in the CCAC sufficiently alleges the required "special or privity-like relationship." The negligent misrepresentation claim's allegations do not support any inference that there was "a closer degree of trust between the parties [beyond] that of the ordinary buyer and seller." *Accord, Dallas Aerospace, Inc.*, 352 F.3d at 788. If anything, the allegations demonstrate that the relationship between Defendants and the 2023 EZoo Festival concertgoers

11

was nothing more than an ordinary "arms-length commercial transaction," which under New York law is totally insufficient to support a claim for negligent misrepresentation. *Accord*, *Izquierdo*, 2016 WL 6459832, at *8.

While as set forth at Point V, *infra*, the Avchukov Plaintiffs have waived any further amendment of their operative pleading, no amendment could fix the fundamental and fatal flaw in the negligent misrepresentation claim, because the Avchukov Plaintiffs will never be able to assert that they are anything other than ordinary, arms-length ticket buyers.  And therefore, Count 6 for negligent misrepresentation should be dismissed with prejudice.

Several more Counts of the CCAC fail for one common reason—duplicative pleading.

## IV.   PLAINTIFFS' UNJUST ENRICHMENT, FRAUD, GOOD FAITH AND FAIR DEALING, AND PROMISSORY ESTOPPEL CLAIMS MUST BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM

Count 2 of the CCAC alleges a claim for breach of contract, asserting that, "[i]n exchange for consideration provided by Plaintiffs and class members (the ticket fee), EZ Festivals and the other Defendants … were contractually bound to provide a safe entertainment experience, at the advertised world-class festival level advertised, for full three days," and that "Plaintiffs and class members who purchased 'VIP' amenities had a contract to receive those amenities." (CCAC, at ¶¶ 379, 381).  Defendants allegedly "did not perform their duties" and thereby breached the purported ticket contract. (*Id*., at ¶¶ 380-382).  While as shown above Avant Gardner did not own the EZoo Festival and did not issue concertgoers their tickets, Defendants are not challenging on this motion the sufficiency of the breach of contract claim.  But four other Counts of the CCAC are subject to dismissal, because they are based on the same alleged contractual duties or seek the same relief as the breach of contract Count, and therefore, those four tag-along Counts are duplicative.

**A.**     **The Unjust Enrichment Count is Based on Defendants Allegedly Being "Paid Consideration by Plaintiffs," Making This Count Duplicative of the Contract Count**

First, Count 3 of the CCAC purports to allege a claim for unjust enrichment, asserting that "EZ Festivals and the other Defendants … were paid consideration by Plaintiffs for services that were not rendered …" (CCAC, at ¶ 387).  But under New York law, a plaintiff may not recover under quasi-contract for claims such as unjust enrichment where an allegedly enforceable contract governs the same subject matter. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005), citing *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 388 (N.Y. 1987).  *See also, Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467, 483 (S.D.N.Y. 2014) (unjust enrichment claim "not available where it simply duplicates, or replaces, a conventional contract or tort claim") (internal citations omitted).  The CCAC here does not allege some duty independent of the alleged contract—in fact, the "unjust enrichment" Count specifically alleges that it is pleaded "alternative to a breach of contract" and that it purportedly results from the Defendants being "paid consideration by Plaintiffs for services that were not rendered." (CCAC, at ¶ 387).  This claim, therefore, is wholly duplicative and should be dismissed.

**B.**     **The Fraud Count Alleges the Same Purported Broken Promises About the 2023 EZoo Festival as the Contract Claim, Making The Fraud Count Duplicative of the Contract Count**

Second, Count 5 of the CCAC alleges a supposed claim for fraud.  But a fraud or misrepresentation claim that is duplicative of a breach of contract claim must be dismissed. *Bridgestone v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996) ("A fraud claim will not survive if it merely restates a claim for breach of contract.").  To maintain a fraud claim alongside a breach of contract claim, a Plaintiff must: (1) "demonstrate a legal duty separate from

13

the duty to perform under the contract"; (2) "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract"; or (3) "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id.* at 20. Count 5 of the CCAC alleges none of these elements.

The Avchukov Plaintiffs' fraud claim asserts that Defendants made misrepresentations regarding the days and times certain musical acts would perform, the light and visual effects of the shows, the range of vendors and artists at the festival, the availability of safe and hygienic facilities, and the maintenance of crowds within legal capacity. (CCAC, at ¶¶ 401-402). Yet these are the same alleged failings that underpin the Avchukov Plaintiffs' breach of contract claim, where they allege "Defendants, in fact, did not provide a single full day of safe, let alone world-class or remotely comparable, festival …," but instead, the CCAC contends, "dozens of promised musical performances never occurred, and the portion of the festival that did happen was so marred by delays, danger, and deception, as well as inadequate facilities and staffing that would be customary and necessary to accommodate festival attendees, such that Defendants have not even partially performed in any way meaningful." (CCAC, at ¶ 380). In other words, Count 5 does not allege any duty separate and apart from the alleged ticket contract promises, and the claim alleges the same supposed misrepresentations that make up the breach of contract claim. This is a classic example of duplicative claim-making.

Because the fraud claim at Count 5 is wholly duplicative of the breach of contract claim at Count 3, Count 5 should be dismissed with prejudice.

**C.** **The Good Faith and Fair Dealing Count Alleges Defendants Did Not Honor the "Benefit of the Bargain," Making This Count Duplicative of the Contract Count**

Third, Count 7 of the CCAC attempts to allege a cause of action for breach of the implied covenant of good faith and fair dealing. (CCAC, at ¶¶ 413-416).  Similar to a duplicative claim for fraud, "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it is based on the same facts as the breach of contract claim." *Washington v. Kellwood Company*, No. 05-cv-10034-DAB, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009).  In order to succeed, a plaintiff must show "legal duty separate and apart from contractual duties." *Id*.

The CCAC here expressly alleges its duplicative nature, where the Avchukov Plaintiffs contend, "Defendants' acts and omissions … interfered with the rights of Plaintiffs and class members to receive the benefits of the bargain." (CCAC, at ¶ 413).  That, of course, parrots Count 2's contractual duty allegations and is plainly a repeat of the breach of contract claim.  Nothing in the CCAC or Plaintiffs' four-paragraph Count 7 alleges a separate legal duty apart from the alleged ticket contracts, but rather, the allegations of this claim are specifically premised on the same facts as the breach of contract claim, including the alleged "benefits of the bargain."  Count 7, therefore, also should be dismissed with prejudice.

**D.** **The Promissory Estoppel Count Alleges the Same Purported Undertakings and Promises as Set Out in the Contract Claim, Making This Count Duplicative of the Contract Count**

Fourth, Count 8 of the CCAC purports to allege a cause of action based on promissory estoppel, asserting that "Defendants made representations to Plaintiffs and class members that the festival was going to be a three-day event …" and that, based on those alleged representations, the Avchukov Plaintiffs, *inter alia*, "purchased tickets" for the 2023 EZoo Festival. (CCAC, at ¶¶ 417,

419).  But "to the extent that the plaintiff's claim for promissory estoppel is based on promises that are consistent with the undertakings contained in the contract, the claim is that the defendants did not perform their obligations under the contract and therefore the [promissory estoppel] claim should be dismissed as duplicative of the breach of contract claim." *Four Finger Art Factory, Inc. v. Dinicola,* No. 99-cv-1259, 2000 WL 145466, at *8 (S.D.N.Y. Feb. 9, 2000).  The CCAC here alleges, in mirror fashion to the breach of contract claim, the same alleged promises as the asserted undertaking in the breach of contract count.

Count 8, accordingly, should be dismissed entirely and with prejudice, along with Counts 3, 5, 6, and 7.

## V.  THE AVCHUKOV PLAINTIFFS HAD PLENTY OF OPPORTUNITY TO REFINE THEIR PLEADING, AND HAVING WAIVED THE OPPORTUNITY TO AMEND THE CCAC, NO FURTHER AMENDMENTS SHOULD BE ALLOWED

At this point, the Avchukov Plaintiffs (like the Brockmole Plaintiffs) have had enough chances to fine-tune their pleading, particularly in response to Defendants' previous pre-motion letter summarizing the basis of this motion.

The Avchukov Plaintiffs filed their original Complaint in this action on September 16, 2023, while the Palie Plaintiffs filed their original Complaint on September 22, 2023. (23-cv-08422, ECF No. 1; 23-cv-09694, ECF No. 1).  The Ting Plaintiffs filed their original Complaint in state court on October 5, 2023, which Defendants removed to this Court on November 3, 2023. (No. 23-cv-09694, ECF No. 1).  On December 26, 2023, with a stipulation of Defendants and leave of the Court, the Avchukov Plaintiffs filed their CCAC. (CCAC, at 1).  Upon extension granted by the Court, (ECF No. 34), on February 15, 2024, Defendants served the Avchukov Plaintiffs with the required pre-motion letter, summarizing the reasons and controlling authorities that

Defendants contend warrant dismissal of Counts 3, 5, 6, 7, and 8 of the CCAC. (*See*, Kennell Decl., at **Ex. 2**).

Under Judge Marrero's Rules, the Avchukov Plaintiffs had a final opportunity to amend—that is, by letter response within seven days, and they  were to indicate whether they intended to make any further amendments (or else stating the controlling authority to support their CCAC). The Avchukov Plaintiffs chose not to serve a responsive letter—even though Judge Garnett's February 26, 2024 Order made clear that, in fact, "all prior orders, dates, and deadlines shall remain in effect notwithstanding the case's reassignment … ." (ECF No. 39, at 1).  The Avchukov Plaintiffs accordingly waived any opportunity for further amendment.

Thus, the Court should grant Defendants' motion to dismiss Avant Gardner and Mr. Bildstein from this action entirely and dismiss Counts 3, 5, 6, 7, and 8 of the CCAC, in their entirety and with prejudice.

## **CONCLUSION**

The Avchukov Plaintiffs' Consolidated Class Action Complaint is massively over-pleaded and should be pared down.  More specifically, the claims against Avant Gardner fail because it was not, as alleged, an owner or operator of the 2023 EZoo Festival, and the claims against EZ Festivals' CEO Jurgen Bildstein fail to sufficiently allege "personal participation" and "actual knowledge" of the entities' purported wrongdoing to maintain an individual corporate officer liability claim.  The negligent misrepresentation claim (Count 6) fails because it does not allege a "special or privity-like relationship," where the Avchukov Plaintiffs can never establish that the 2023 EZoo Festival concertgoers were anything other than ordinary buyers in an arms-length commercial transaction.  And the claims for unjust enrichment (Count 3), fraud (Count 5), good

faith and fair dealing (Count 7), and promissory estoppel (Count 8) are each duplicative of the breach of contract claim.

For all those reasons, Defendants respectfully request that this Court dismiss this action against Avant Gardner and Mr. Bildstein entirely and with prejudice and dismiss Counts 3, 5, 6, 7, and 8 of the CCAC with prejudice, and because the Avchukov Plaintiff chose to waive any further refine their pleading, with no opportunity for another amendment.

Dated: March 21, 2024
    New York, New York

                                Respectfully submitted,

                                KAUFMAN DOLOWICH, LLP

                    By:     */s/ Patrick M. Kennell*_____
                            Patrick M. Kennell
                               pkennell@kaufmandolowich.com
                            Kathleen A. Mullins
                               kathleen.mullins@kaufmandolowich.com
                            40 Exchange Place – 20th Floor
                            New York, New York 10005
                            Tel:  (212) 485-9600

                            *Attorneys for Defendants*
                            AVANT GARDNER, LLC, EZ
                            FESTIVALS, LLC, MADE EVENT, LLC
                            and JURGEN BILDSTEIN