**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICOLE BROCKMOLE, LAUREN BAIR and NICK ERCKLENTZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EZ FESTIVALS LLC, AVANT GARDNER LLC, MADE EVENT LLC, CITYFOX, REYNARD PRODUCTIONS, JURGEN BILDSTEIN, PHILIPP WIEDERKEHR, AGDP HOLDING INC., GARDNER PURCHASER LLC, WIEDERKEHR ASSOCIATES, STEWART PURCHASER LLC, WRE PARENT US HOLDING CORP. INC., WRE MANAGEMENT LLC, WRE HOLDING AG and JOHN DOES NO. 1-10,<br><br>Defendants. | Civil Action No.: 1:23-cv-08106<br><br>**(Oral Argument Requested)** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**BY WRE PARENT US HOLDING CORP. INC., WRE MANAGEMENT LLC, WRE**
**HOLDING AG, WIEDERKEHR ASSOCIATES AG, GARDNER PURCHASER LLC,**
**STEWART PURCHASER LLC, AND PHILIPP WIEDERKEHR**
**TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Richard W. Boone Jr.
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com

*Attorneys for Defendants WRE PARENT US*
*HOLDING CORP. INC., WRE*
*MANAGEMENT LLC, WRE HOLDING AG,*
*WIEDERKEHR ASSOCIATES, GARDNER*
*PURCHASER LLC, STEWART*
*PURCHASER LLC and PHILIPP*
*WIEDERKEHR*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL ALLEGATIONS ............................................................................. 2

LEGAL STANDARDS ...................................................................................... 5

ARGUMENT ..................................................................................................... 6

    I.   Plaintiffs' RICO Claims Fail as a Matter of Law ...................................... 6

        A.  Count I Fails to Allege a Plausible Claim for
            Violation of 18 U.S.C. § 1962(a) ...................................................... 8

            1.  The Complaint Fails to Adequately Allege
                the "Enterprise" Element ....................................................... 9

            2.  The Complaint Fails to Adequately Allege
                "Racketeering Activity" ......................................................... 10

            3.  The Complaint Fails to Allege Any Injury Resulting from
                the Investment of the Proceeds of Any "Racketeering Activity" ......................... 13

        B.  Count II Fails to Allege a Plausible Claim for
            Violation of 18 U.S.C. § 1962(c) ...................................................... 13

        C.  Count III Fails to State a Plausible Claim for
            Violation of 18 U.S.C. § 1962(d) ...................................................... 14

    II.  Count VII Fails to State a Plausible Claim for
        Violation of N.Y. GBL §349 and 350 ...................................................... 16

CONCLUSION ................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page**

*Adler v. Berg Harmon Assoc.*,
   790 F. Supp. 1222 (S.D.N.Y. 1992) ...................................................................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007) ....................................................................5, 6

*Bernstein v. Misk*,
   948 F. Supp. 228 (E.D.N.Y. 1997) .........................................................................10

*Casio Computer Co. v. Sayo*,
   2000 U.S. Dist. LEXIS 15411, No. 98 Civ. 3772 (WK),
   2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) .........................................................11

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
   187 F.3d 229 (2d Cir. 1999) ...................................................................................15

*Com-Tech Associates v. Computer Associates International, Inc.*,
   753 F. Supp. 1078 (E.D.N.Y. 1990) .......................................................................16

*Crawford v Franklin Credit Mgt.*,
   758 F. 3d 473 (2d Cir 2014) ...................................................................................15

*Dale v. Banque SCS Alliance S.A.*,
   No. 02 Civ. 35922005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) .............................10

*De Muro v. E.F. Hutton*,
   643 F. Supp. 63 (S.D.N.Y. 1986) ...........................................................................8

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001) .................................................................................8, 14

*Discon, Inc. v. NYNEX Corp.*,
   93 F.3d 1055 (2d Cir. 1996), vacated on other grounds, 525 U.S. 128 (1998).........15

*Entretelas Americanas S.A. v Soler*,
   2020 U.S. Dist. LEXIS 20692 (S.D.N.Y. Feb. 3, 2020) .........................................10

*Festinger v Snitow Kaminetsky Rosner & Snitow, LLP*,
   No. 20-CV-9784 (PGG) (KNF),
   2021 U.S. Dist. LEXIS 126819 (S.D.N.Y. July 7, 2021)........................................15

*Figueroa Ruiz v. Alegria*,
    896 F.2d 645 (1st Cir. 1990) .......................................................................................7

*First Cap. Asset Management, Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ...............................................................................11, 15

*Glover v. Bob's Discount Furniture, LLC*,
    621 F. Supp. 3d 442 (S.D.N.Y. 2022) ......................................................................17

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co.*,
    37 N.Y.3d 169 (2021) ...............................................................................................17

*In re Integrated Resources Real Estate*,
    850 F.Supp. 1105 (S.D.N.Y. 1993) ............................................................................7

*In re Sling Media Slingbox Advert. Litig.*,
    202 F. Supp. 3d 352 (S.D.N.Y. 2016) ......................................................................17

*In re Tether & Bitfinex Crypto Asset Litig.*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021) ...............................................................8, 13, 15

*Katzman v Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ................................................................................7

*Koch v. Acker, Merrall & Condit Co.*,
    944 N.Y.S.2d 452 (2012) ..........................................................................................17

*Leung v. Law*,
    387 F. Supp. 2d 105 (E.D.N.Y. 2005) ........................................................................8

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir. 1992) .....................................................................................12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    1994 U.S. Dist. LEXIS 2929, No. 91 Civ. 2923,
    1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .............................................................16

*Moore v. PaineWebber, Inc.*,
    189 F.3d 165 (2d Cir. 1999) .....................................................................................12

*Morales v. Apple, Inc.*,
    No. 22-cv-10872 (JSR),
    2023 U.S. Dist. LEXIS 151888 (S.D.N.Y. Aug. 29, 2023) ...............................16, 17

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013) .......................................................................................5

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ........................................................................................16

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
   75 F.3d 801 (2d Cir. 1996) .........................................................................................12

*Schlesinger v Schlesinger*,
   2007 U.S. Dist. LEXIS 104921 (E.D.N.Y. Feb. 8, 2007) ..........................................10

*Schmidt v Fleet Bank*,
   16 F Supp 2d 340 (S.D.N.Y. 1998) ..............................................................................7

*Smulley v. Fed. Hous. Fin. Agency*,
   754 F. App'x 18 (2d Cir. 2018) ..................................................................................13

*United States Fire Ins. Co. v. United Limousine Serv.*,
   303 F. Supp. 2d 432 (S.D.N.Y. 2004) ..................................................................13, 16

*United States v. Bledsoe*,
   674 F.2d 647 (8th Cir. 1982) ........................................................................................7

*United States v. Persico*,
   832 F.2d 705 (2d Cir. 1987), cert. denied, 486 U.S. 1022 (1988) ............................14

*United States v. Porcelli*,
   865 F.2d 1352 (2d Cir. 1989) .......................................................................................7

*United States v. Turkette*,
   452 U.S. 576 (1981) .......................................................................................................9

*Vivar v. Apple Inc.*,
   22-cv-0347, 2022 U.S. Dist. LEXIS 164577,
   2022 WL 4227309 (S.D.N.Y. Sept. 12, 2022) ..........................................................17

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
   2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. Sep. 29, 2004) ..........................................11

*Williams v. Affinion Group, LLC*,
   889 F.3d 116 (2d Cir. 2018) .......................................................................................14

*Woods v. Maytag Co.*,
   2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ............................................................17

## Statutes

18 U.S.C. § 1956(c)(7).....................................................................................................10

18 U.S.C. § 1961...............................................................................................................8

18 U.S.C. § 1961(1) ..................................................................................................9

18 U.S.C. § 1961(4) ..................................................................................................8

18 U.S.C. § 1961(5) ..............................................................................................9, 14

18 U.S.C. § 1962(a) ..........................................................................................8, 13, 15

18 U.S.C. § 1962(b) ................................................................................................15

18 U.S.C. § 1962(c) ........................................................................................13, 14,15

18 U.S.C. § 1962(d) ......................................................................................14, 15, 16

18 U.S.C. § 1964(c) ..............................................................................................8, 13

New York General Business Law § 349 ............................................................16, 17

New York General Business Law § 350 ............................................................16, 17

**Rules**

Fed. R. Civ. P. 9(b) ..........................................................................................1, 11, 14

Fed. R. Civ. P. 11(b) ................................................................................................1

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 6

Defendants WRE Parent US Holding Corp. Inc. ("WRE Parent"), WRE Management LLC ("WRE Management"), WRE Holding AG ("WRE AG"), Wiederkehr Associates AG ("Wiederkehr Associates"), Gardner Purchaser LLC ("Gardner Purchaser"), Stewart Purchaser LLC ("Stewart Purchaser"), and Philipp Wiederkehr ("Wiederkehr") (collectively, the "Moving Defendants") respectfully submits this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("Complaint") (Dkt. No. 23), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Simply put, the Moving Defendants had absolutely nothing at all to do with the 2023 Electric Zoo Festival (the "Festival"). Their only connection to anything even tangentially relevant to the instant lawsuit is that a few of the entities own and/or manage the property in Brooklyn where unrelated Defendant Avant Gardner LLP (Avant Gardner) runs a music venue. That venue itself had no relation to the Festival, which was held entirely on Randalls Island. Accordingly, Plaintiffs' allegations of a RICO conspiracy related to the Festival which somehow, inexplicably, involved the Moving Defendants are – at best – pure fantasy. As such, Plaintiffs do not, and cannot, meet the basic pleading standards under Rule 8 of the Federal Rules of Civil Procedure – let alone the heightened standards of Rule 9(b) applicable to Plaintiffs' claims. Plaintiffs' allegations do not appear even to satisfy counsel's basic requirements under Rule 11(b).

The Complaint was filed by attendees of the Festival, who allege that their tickets were not honored for the entirety of the planned three-day event. As such, this matter is a simple breach of contract action with no apparent basis for federal jurisdiction. Plaintiffs counsel has attempted, without any foundation whatsoever, to manufacture such jurisdiction by alleging a spurious conspiracy involving individuals and entities with no relation to the Festival but which somehow supposedly implicates the Racketeer Influenced and Corrupt Organizations Act ("RICO").

However, aside from conclusory statements, Plaintiffs cannot muster even a single allegation of any act by the Moving Defendants in furtherance the supposed conspiracy.  In fact, Plaintiffs do not allege that the Moving Defendants did anything at all, except for purchasing and leasing the property where Avant Gardner conducts unrelated business.  Accordingly, Plaintiffs' Complaint must be dismissed, in its entirety and with prejudice, as against all of the Moving Defendants.

## FACTUAL ALLEGATIONS[1]

The only coherent and relevant factual allegations in Plaintiffs' Complaint are: (1) that the subject Festival was owned and run by Avant Gardner (Dkt. 23, at ¶ 11);[2] (2) that it was supposed to be a three-day electronic dance music ("EDM") festival held on Randall's Island in New York City from Friday, September 1, 2023, to Sunday, September 3, 2023 (*id.*, at ¶ 47); (3) that the Friday session was cancelled without refunds being issued (*id.*, at ¶¶ 52-53); (4) that the Sunday session was oversold and, therefore, as many as 7,000 people may have been denied admission, also without refunds being issued (*id.*, at ¶ 55); and (5) that Plaintiffs bought tickets to the Festival (*id.*, at ¶¶ 8-10).  None of those allegations have anything at all to do with the Moving Defendants. In fact, none of the Moving Defendants is specifically alleged to have done anything as regards either the Festival or the alleged conspiracy of which it was supposedly part.  The allegations regarding these Defendants are so sparce, they can be listed here, in their entirety.

---

[1] While the Moving Defendants dispute many of the Plaintiffs' factual allegations, they are accepted as true here, except where "contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001).  The Court may also consider documents referred to in the Complaint even if Plaintiffs fail to attach them, "if the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Schafer v Direct Energy Servs.*, LLC, 845 F App'x 81, 82 (2d Cir. 2021).
[2] The fact that Avant Gardner denies this allegation (Dkt. 48, pp. 10, 16), upon which the entire supposed conspiracy rests, only further demonstrates the folly of Plaintiffs' claims.

***The "Real Estate Defendants"***

The Complaint groups the following together as the "Real Estate Defendants": Wiederkehr; Wiederkehr Associates; Gardner Purchaser; and Stewart Purchaser.[3] As regards each, the Complaint alleges only as follows:

- Wiederkehr is alleged: (1) to be one of two individuals – the other being Jurgen Bildstein ("Bildstein") – "who directly and/or indirectly own all of the entity defendants" (Dkt. 23, ¶ 5); (2) to be "a co-owner and founder of AG[4]" (*id.*, ¶ 19);[5] (3) to be "an indirect owner and operator of the real property which Avant Gardner occupies in Brooklyn" (*id.*); (4) to "operate[] a private equity and asset management firm whose investors are believed to be DOES 1-10" (*id.*); (5) to be the owner "in whole or in part" of WRE Parent and WRE Management (*id.*, ¶24); (6) to have, together with Bildstein, "set up Avant Gardner to rent the [buildings in Brooklyn now occupied by Avant Gardner] from WRE AG[6]" (*id.*, ¶ 30); (7) to have been "quoted in VICE" in 2017 as saying: "the investors wanted to diversify and they liked the economics of the entertainment business" (*id.*, ¶ 30); and (8) to be one of two individuals (the other, again, being Bildstein) that "public reports describe as controlling, or as the direct or indirect owners of the other Defendants" (*id*, ¶ 78).[7]

- Wiederkehr Associates is alleged: (1) to be "an entity which owns and/or operates Wiederkehr[8] and its investors real estate holdings and is believed to be the assumed name for defendant Wiederkehr Real Estate AG, a property manager" (*id.*, ¶ 22); (2) together with WRE Management, to "manage[] the property upon which AG operates" (*id.*, ¶24);[9] (3) to have "bought the buildings now occupied by Avant Gardner in 2016"[10] and to have rented those properties to Avant Garner (*id.*, ¶ 30); and (5) to

---

[3] There is no allegation that Defendant AGDP Holding Inc. ("AGDP"), which is also included among the "Real Estate Defendants," is in any way related to any of the Moving Defendants, and indeed it is not.

[4] "AG" is not defined in the Complaint, but appears from context to be Avant Gardner.

[5] *See also id.* ("Wiederkehr founded Avant Gardner with Bildstein in 2017").

[6] "WRE AG" is not defined in the Complaint, but appears from context to refer to "Wiederkehr Real Estate AG," which is alleged to be another name for Wiederkehr Associates.

[7] The Complaint also includes the wholly conclusory allegation that "Defendants Bildstein and Wiederkehr have been responsible for oversight of the operation and commission of predicate acts, and have directed other conspirators to take actions necessary to accomplish the overall aims of the criminal enterprise namely." It does not reveal what are the supposed "predicate acts" or what actions Wiederkehr purportedly "directed the other conspirators to take."

[8] This term is defined in the Complaint as Philip W. Wiederkehr. (Dkt. 23, ¶¶ 5, 19).

[9] This allegation apparently refers to Wiederkehr Associates as "Wiederkehr Real Estate AG."

[10] This allegation apparently refers to Wiederkehr Associates as "Wiederkehr Real Estate A.G."

have "provided Avant Gardner with a 'Tenant Improvement Allowance' to transform the space into the Avant Gardner entertainment complex."[11]

- Gardner Purchaser is alleged to be "a Foreign Limited Liability Company formed in Delaware" and "listed on SLA documents as 'landlord' to AGDP Holding Inc." (*id.*, ¶ 21).

- Stewart Purchaser is alleged to be "a New York limited liability company which is listed on SLA documents as the 'landlord' to AGDP Holding Inc."

Obviously, none of the foregoing has anything to do with the Festival and none of Plaintiffs' allegations could even remotely constitute illegal or tortious activity.

### The "Investor Defendants"

The Complaint groups the following together as the "Investor Defendants":  WRE AG; WRE Parent; and WRE Management.  As regards each, the Complaint alleges only as follows:

- WRE AG is alleged to be "a Swiss entity which is the owner and operator of WRE Parent."  (*Id.*, ¶ 25).

- WRE Parent is alleged to be an "entit[y] owned in whole or in part by Defendant Philipp Wiederkehr."  (*Id.*, ¶ 24).

- WRE Management is alleged:  (1) to be "a New York Limited Liability Company whose address is listed as 97-77 Queens Boulevard, Suite 620, Rego Park, New York" (*id.*, ¶ 24); (2) to be an "entit[y] owned in whole or in part by Defendant Philipp Wiederkehr" (*id.*); and, together with Wiederkehr Real Estate AG, to "manage[] the property upon which AG operates."

Again, none of the foregoing has anything to do with the Festival and none of Plaintiffs' allegations could even remotely constitute illegal or tortious activity.

In addition to the foregoing, the Complaint includes a curious allegation that: "According to the website https://webdevoi.manufaktur.com/, Avant Gardner's parent company is WRE US Holding Company whose parent company is WRE Holding AG whose parent company is

---

[11] This allegation and the one prior refer to "WRE AG."  As noted, this term is not defined in the Complaint but appears to refer to "Wiederkehr Real Estate AG," which is alleged to be another name for Wiederkehr Associates.

Defendant Wiederkehr Associates AG ("WAAG")." (*Id.*, ¶ 12). "WRE US Holding Company" is not an entity named or discussed elsewhere in the Complaint and the website "https://webdevoi.manufaktur.com/" does not exist. Additionally, it appears that this allegation was taken from an unsubstantiated post on Reddit by a user named "skidmarke," which actually references the website: https://webdev01.manufaktur.com/. (Ex. 1). That website apparently does exist, but is password protected. The reference to "webdev01" would also appear to indicate that it is a web development environment and not something that was posted for public viewing.[12] Accordingly, it does not appear that Plaintiffs' counsel could ever have accessed the website which supposedly forms the basis for this allegation, as would be required by Rule 11(b).

## LEGAL STANDARDS

In determining a Rule 12(b)(6) motion to dismiss, the Court must "accept[] all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted). Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

---

[12] The root website, https://manufaktur.com/ forwards to https://services.zuri.net/, a German language website for a Zurich-based website developer. It appears from other posts on Reddit that the user "skidmarke" is based in Washington, DC.

entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966) (internal quotation marks omitted).

Courts are to utilize a two-step approach when ruling on whether a complaint adequately states a claim to relief. *Iqbal*, 556 U.S. at 679-80, 129 S.Ct. at 1950. First, a court should "begin by identifying pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of the truth." *Id.* Conclusory statements and recitals of the elements of a cause of action, thus, are insufficient to sustain a complaint. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. Second, after stripping these legal conclusions from the complaint, a court should look at any remaining "well-pleaded factual allegations," assume them to be true and "determine whether … they plausibly give rise to an entitlement to relief." *Id.* Furthermore, where the remaining facts are merely consistent with a claim, but do not permit the reasonable inference that the defendant is liable, the complaint should be dismissed. *Id.*

## **ARGUMENT**

For the reasons set forth below, Plaintiffs' Complaint as to the Investor Defendants should be dismissed, in its entirety and with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    **Plaintiffs' RICO Claims Fail as a Matter of Law**

The only causes of action in Plaintiffs' Complaint asserted against all of the Moving Defendants are their purported RICO claims. Even among those claims, it is not entirely clear against which Defendants they are asserted because, while Count I is alleged "Against All Defendants"), Counts II and III are asserted "Against All RICO Defendants," and Plaintiffs do not specify the Defendants to which the term "RICO Defendants" refers. Regardless, because each of Plaintiffs' purported RICO claims is pure nonsense, each should be dismissed, with prejudice.

In this regard, the Federal Circuits have routinely noted that Courts should not take civil RICO claims lightly because "the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Katzman v Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)). In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." *United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir. 1989). To this end, a court's focus must be "to ensure that RICO's severe penalties are limited to 'enterprises consisting of more than simple conspiracies to perpetrate the acts of racketeering.'" *Schmidt v Fleet Bank*, 16 F Supp 2d 340, 346 (S.D.N.Y. 1998) (quoting *United States v. Bledsoe*, 674 F.2d 647 (8th Cir. 1982)). "Courts must always be on the lookout for putative RICO case that are really 'nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.'" *Id.* (quoting *In re Integrated Resources Real Estate*, 850 F.Supp. 1105, 1148 (S.D.N.Y. 1993)).

Here, it would be charitable to Plaintiffs to call their allegations "an ordinary fraud case." A reasoned analysis of Plaintiffs ' Complaint reveals an ordinary breach of contract claim – the Plaintiffs paid for a three day concert and didn't get all that they paid for. Regardless, none of that has anything at all to do with the Moving Defendants. Accordingly, Plaintiffs must rely solely on conclusory allegations which amount to little more than a recitation of the elements of a RICO claim. Because, for the reasons set forth in greater detail below, such allegations are insufficient as matter of law, all of Plaintiffs' RICO claims must be dismissed, with prejudice.

### A.    Count I Fails to Allege a Plausible Claim for Violation of 18 U.S.C. § 1962(a)

Count I of Plaintiffs' Complaint purports to assert a claim under 18 U.S.C. § 1962(a) ("Section 1962(a)"). Section 1962(a) "makes it a crime for a person who has 'received' income

from a pattern of racketeering activity to 'use or invest' such income." *De Muro v. E.F. Hutton*, 643 F. Supp. 63, 66 (S.D.N.Y. 1986). "Thus subsection (a) does not make it criminal to engage in a pattern of racketeering activity, but only penalizes the use of income derived therefrom." *Id.* "18 U.S.C. § 1964(c) provides for civil causes of action by parties who have been injured by violations of § 1962." *Id.* "[T]o state a claim under § 1964(c) for violation of § 1962(a) plaintiff must allege that he was injured by the violation there defined, namely the use or investment of income derived from racketeering." *Id.*

Thus, "in order to state a cause of action for a violation of [Section] 1962(a), a plaintiff must allege [i] that a defendant received income from a pattern of racketeering activity; [ii] invested that income in the acquisition of a stake in, or establishment of, an enterprise distinct from the one from which the income was derived; and [iii] that the plaintiff suffered an injury flowing from this reinvestment of racketeering income distinct from any injury suffered because of the commission of the original predicate acts of racketeering activity." *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 124 (S.D.N.Y. 2021) (citing *Leung v. Law*, 387 F. Supp. 2d 105, 120 (E.D.N.Y. 2005)).

"The terms 'enterprise,' 'racketeering activity,' and 'pattern of racketeering activity' are defined in 18 U.S.C. § 1961." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). "A RICO enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Id.* (quoting 18 U.S.C. § 1961(4)). "'Racketeering activity' is broadly defined to encompass a variety of state and federal offenses including, inter alia, murder, kidnapping, gambling, arson, robbery, bribery and extortion." *Id.* (citing 18 U.S.C. § 1961(1)). "A '"pattern of racketeering activity" requires at least two acts of racketeering activity.'" *Id.* (quoting 18 U.S.C. § 1961(5)). However, "[a]lthough at

least two predicate acts must be present to constitute a pattern, two acts alone will not always suffice to form a pattern." *Id.*

      1.      **The Complaint Fails to Adequately Allege the "Enterprise" Element**

As discussed, "the RICO statute defines an 'enterprise' as 'including any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Id.* at 306-07. "The enterprise 'is an entity, … a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "A racketeering enterprise is proven through 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Id.*

Here, Plaintiffs have not even attempted to allege, beyond conclusory statements, that any of the Moving Defendants engaged in any acts which would even suggest that they and the other Defendants engaged in anything remotely resembling a common enterprise. Plaintiffs allege that "[t]he Enterprise has a real estate arm," "a music arm," and "an investment arm," but they do not attempt to explain how those "arms" functioned as a cohesive whole. Rather the Complaint merely lumps all of the Defendants together, calling them an "association-in fact" (Dkt. 23. ¶ 77) and asserting that "[t]he Defendants used and invested the proceeds of racketeering activity in the enterprise by taking the revenues earned from operation of the venues and investing same in concert events and [the Festival] which are part of the enterprise." (Dkt. No. 23, at ¶ 109). However, there is no allegation that any of the Moving Defendants operated any of the venues, so they clearly could not have invested the proceeds of such operations in future events.

Plaintiffs also allege that "[t]he RICO conspiracy is expressed insofar as the members of the enterprise had written agreements to which they were parties and can also be inferred from the interdependence of the activities and person involved." (*Id.*, ¶110). However, because all the

Moving Defendants are alleged to have done was lease the Brooklyn property to Avant Garner, the only written agreements that are even hinted at in the Complaint are the lease agreement(s) for that property.  Certainly those agreements cannot be sufficient to impose liability on a landlord for RICO violations.  Otherwise, every landlord is potentially an unwitting co-conspirator.

### 2.    The Complaint Fails to Adequately Allege "Racketeering Activity"

As "predicate acts" of "racketeering activity," the Complaint asserts that Defendants engaged in "money laundering" and "mail and wire fraud," without explaining either.[13]

As regards the former, "[w]hile plaintiffs need not plead money laundering with great particularity, they must nonetheless plead all essential elements of the offenses." *Schlesinger v Schlesinger*, 2007 U.S. Dist. LEXIS 104921, at *22 (E.D.N.Y. Feb. 8, 2007) (quoting *Bernstein v. Misk*, 948 F. Supp. 228, 236 (E.D.N.Y. 1997)).  "To state a claim for money laundering under RICO, a plaintiff must plead: '(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds.'" *Entretelas Americanas S.A. v Soler*, 2020 U.S. Dist. LEXIS 20692, at *22-23 (S.D.N.Y. Feb. 3, 2020) (quoting *Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 35922005 WL 2347853, at *5, n.2 (S.D.N.Y. Sept. 22, 2005)).

The Complaint only contains a conclusory allegation that, "the Investment Defendants,[14] upon information and belief, have received from the Music Event Defendants and/or the Real

---

[13] The Complaint also includes a spurious reference the Controlled Substances Act, which is never explained.  (Dkt. 23, ¶ 90).

[14] "Investment Defendants" is another undefined term in the Complaint, but is assumed to be the Investor Defendants.

Estate Defendants, and continue to receive, deposit and spend more than $10,000 of proceeds generated from acts and conduct constituting predicate acts." (Dkt. 23, ¶ 92). The Complaint does not provide any explanation of what those predicate acts might be, or how the mere receipt of money constitutes "money laundering." There are also no allegations whatsoever that the Moving Defendants knew that the money represented the proceeds of unlawful activity or knew that the transaction was designed to conceal the source of those proceeds. *See W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 U.S. Dist. LEXIS 19501, at *31 (S.D.N.Y. Sep. 29, 2004) (quoting *Casio Computer Co. v. Sayo*, 2000 U.S. Dist. LEXIS 15411, No. 98 Civ. 3772 (WK), 2000 WL 1877516, at *16-17 (S.D.N.Y. Oct. 13, 2000) (while a plaintiff need not allege money laundering with great particularity where the money laundering is not premised on fraud, a plaintiff "must plead all elements of the offense" in order to adequately plead money laundering as a predicate act under RICO and withstand motions to dismiss)).

As for the alleged mail and wire fraud, "[a]llegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *First Cap. Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). Rule 9(b) requires that, "[i]n alleging fraud ..., a party must state with particularity the circumstances constituting the fraud ...". The pleadings fail to provide any specifics as to what the Moving Defendants might have done in furtherance of the supposed conspiracy, particularly as concerns any alleged mail and wire fraud. The Moving Defendants are not alleged to have mailed or wired anything, let alone made any misrepresentations which might constitute fraud.

To properly plead mail and wire fraud as predicate acts, "the complaint [must] 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify

those responsible for the statements.'" *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). "The plaintiffs must also 'identify the purpose of the mailing within the defendant's fraudulent scheme.'" *Id.* "In addition, the plaintiffs must 'allege facts that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996)). Plaintiffs have not even attempted to allege any of this.

Rather, the Complaint includes only conclusory assertions that: (1) "[t]he enterprise engaged in conduct constituting mail and wire fraud by using the internet to transmit materially false and misleading promotions soliciting customers for [the Festival], the "after-parties" and events at Avant Gardner to buy tickets well beyond the legally permitted capacity" (Dkt. 23, ¶ 95); and (2) "[t]he enterprise engaged in further instances of wire fraud via its promotion of [the Festival] by misrepresenting material aspects of the show and using false representations about [the Festival] to solicit sales of after party tickets to Avant Gardner in connection with [the Festival]" (*id.*, ¶ 96). The Complaint does not reveal how the Moving Defendants might have had anything to do with Avant Gardner's ticket sales or alleged misrepresentations about the Festival. Accordingly, Plaintiffs allegations do not satisfy the requirements under Rule 9(b) to particularize the who, what, when, where, how, and why of the specific misrepresentations purportedly made by these Defendants or to these Plaintiffs.

### 3.    The Complaint Fails to Allege Any Injury Resulting from the Investment of the Proceeds of Any "Racketeering Activity"

Even if Plaintiffs allegations were sufficient to establish that the disparate Defendants were engaged in an "enterprise" for the purpose of "racketeering activity," which they are not, Plaintiffs have not plausibly alleged how they were injured by the Moving Defendants investing the proceeds of that racketeering activity. Plaintiffs conclusory allegations of fraud and subsequent money

laundering end with the money being received by the Investor Defendants.   There are no allegations that money was put back into the enterprise or that subsequent investment resulted in Plaintiffs injuries.  *See, e.g., In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d at 127 ("Plaintiffs must allege an injury caused by the investment of the racketeering proceeds, and not merely by the predicate acts.").  "Conclusory allegations that the defendant "used or invested" the income derived from racketeering in its operations are insufficient."  *United States Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 449 (S.D.N.Y. 2004).

For each of the foregoing reasons, Plaintiffs purported claim under Section 1962(a) fails as a matter of law and must be dismissed, with prejudice.

### B.    Count II Fails to Allege a Plausible Claim for Violation of 18 U.S.C. § 1962(c)

Count II of Plaintiffs' Complaint purports to assert a claim under 18 U.S.C. § 1962(c) ("Section 1962(c)").  "Section 1962(c) makes it 'unlawful for any person employed by or associated with any enterprise … to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"  *Smulley v. Fed. Hous. Fin. Agency*, 754 F. App'x 18, 22 (2d Cir. 2018)(quoting 18 U.S.C. § 1962(c)).  "Accordingly, a civil RICO plaintiff must show '(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invested in, or maintained an interest in, or participated in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.'"  *Id.* (quoting *Williams v. Affinion Group, LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018)[15]).  "The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)."  *United States v. Persico*, 832 F.2d 705, 714

---

[15] As edited by the Court.

(2d Cir. 1987), cert. denied, 486 U.S. 1022 (1988).  Accordingly, "[t]he requirements of section 1962(c) must be established as to each individual defendant."  *DeFalco*, 244 F.3d at 306.

In Count II, Plaintiffs allege that all of the "RICO Defendants" are liable for violations of Section 1962(c) because each of them "has engaged in multiple predicate acts, as described herein" and "[t]he conduct of each of the RICO Defendants described herein, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5)."  Because Plaintiffs rely on the same vague "predicate acts" for this claim, which in the case of the fraud allegations are again subject to the heightened standard of Rule 9(b), Count II fails for precisely the same reasons as Count I.  Moreover, even if Plaintiffs conclusory allegations regarding acts by the supposed "enterprise" were sufficient to preserve their Section 1962(a) claim, which they are not, Plaintiffs' Section 1962(c) claim must still be dismissed because there are simply no allegations regarding any acts by the Moving Defendants in furtherance of the alleged conspiracy.

For each of the foregoing reasons, Plaintiffs purported claim under Section 1962(c) fails as a matter of law and must be dismissed, with prejudice.

### C.    Count III Fails to State a Plausible Claim for Violation of 18 U.S.C. § 1962(d)

Count III of Plaintiffs' Complaint purports to assert a claim under 18 U.S.C. § 1962(d) ("Section 1962(d)").  Section 1962(d) makes it unlawful to conspire to violate any of the three prohibitions of Section 1962, which include Sections 1962(a) and Section 1962(c).  *In re Tether and Bitfinex Crypto Asset Litigation*, 576 F.Supp. 3d at 115.[16]

The elements of a cause of action under Section 1962(b) are:  "(i) 'Defendants agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two

---

[16] The other prohibition at 18 U.S.C. § 1962(b) ("Section 1962(b)") "makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity."  *Id.*  Plaintiffs' Complaint does not assert a claim under Section 1962(b).

predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise'; and (ii) 'if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity.'" *Festinger v Snitow Kaminetsky Rosner & Snitow, LLP*, No. 20-CV-9784 (PGG) (KNF), 2021 U.S. Dist. LEXIS 126819, at *28 (S.D.N.Y. July 7, 2021) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244-45 (2d Cir. 1999)). Thus, to assert a cause of action under RICO § 1962(d) "a plaintiff must show that the defendant agreed with at least one other entity to commit a substantive RICO offense." *Id.* (quoting *Crawford v Franklin Credit Mgt.*, 758 F. 3d 473, 487 (2d Cir 2014)).

Count III of the Complaint merely includes more of the same conclusory allegations of racketeering activity upon which they rely for their other RICO claims. Because those claims fail as a matter of law, so too must Plaintiffs' Section 1962(d) claim. *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d at 182; *see also Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), vacated on other grounds, 525 U.S. 128 (1998).

Plaintiffs' Section 1962(d) claim must also fail for the further reason that "[c]onclusory allegations that 'all of the defendants conspired among themselves to further the scheme to defraud' and 'knowingly and willingly participated in the conspiracy' are insufficient." *United Limousine*, 303 F. Supp. 2d at 453-54 (quoting *Adler v. Berg Harmon Assoc.*, 790 F. Supp. 1222, 1234 (S.D.N.Y. 1992)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 U.S. Dist. LEXIS 2929, No. 91 Civ. 2923, 1994 WL 88129, at *30 (S.D.N.Y. Mar. 15, 1994) ("Numerous district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim.") (citations omitted); *Com-Tech Associates v.*

*Computer Associates International, Inc.*, 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990) (dismissing conspiracy count because plaintiff failed to allege facts establishing that each of the defendants, by words or actions, manifested an agreement to commit two or more predicate acts).

For each of the foregoing reasons, Plaintiffs purported claim under Section 1962(d) fails as a matter of law and must be dismissed, with prejudice.

## II.    Count VII Fails to State a Plausible Claim for Violation of N.Y. GBL §349 and 350

Count III of Plaintiffs' Complaint purports to assert a claim against the "Real Estate Defendants"[17] under New York General Business Law ("N.Y. GBL") §§ 349 and 350. "Section 349 makes it unlawful to engage in '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in furnishing of any service' in New York, N.Y. Gen. Bus. Law § 349, and Section 350 makes it unlawful to engage in '[f]alse advertising [*4] in the conduct of any business, trade or commerce or in the furnishing of any service' in New York. N.Y. Gen. Bus. Law § 350." *Morales v. Apple, Inc.*, No. 22-cv-10872 (JSR), 2023 U.S. Dist. LEXIS 151888, at *3-4 (S.D.N.Y. Aug. 29, 2023). "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)). "Both affirmative representations and omissions may qualify as deceptive or misleading acts or practices." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016).

"To adequately plead a N.Y. GBL claim premised on an affirmative misrepresentation, 'a plaintiff must … identify the specific acts or practices alleged to be misleading.'" *Morales*, 2023

---

[17] As previously discussed, these Defendants include Wiederkehr; Wiederkehr Associates; Gardner Purchaser; and Stewart Purchaser.

U.S. Dist. LEXIS 151888, at *4 (quoting *Glover v. Bob's Discount Furniture, LLC*, 621 F. Supp. 3d 442, 453 (S.D.N.Y. 2022)).  "If 'the allegations' in the complaint 'are insufficiently specific to establish a deceptive practice,' then '[c]ourts routinely dismiss [the] claim[].'"  *Id.* (quoting *Woods v. Maytag Co.*, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010)).  *See also, e.g., Vivar v. Apple Inc.*, 22-cv-0347, 2022 U.S. Dist. LEXIS 164577, 2022 WL 4227309, at *6 (S.D.N.Y. Sept. 12, 2022) (finding the "claims lack[ed] . . . facial plausibility . . . because [the plaintiff] has not provided the writing or marketing materials containing the[] alleged misrepresentations"); *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d at 359, n. 10 (reasoning that because the complaint "fail[ed] to describe" the advertisements and misrepresentations, it did "not plausibly plead any misleading statements sufficient to survive a motion to dismiss").

The Complaint contains no allegations of any interaction between the Real Estate Defendants and the Plaintiffs, or any consumer for that matter.  The Complaint therefore lacks any claim of consumer-oriented conduct as required to state a claim under N.Y. GBL §§ 349 and 350.  Indeed, the only allegation of any act by the Real Estate Defendants is their leasing commercial property to Avant Gardner, a business.  The New York Court of Appeals "has explained that an act or practice is consumer-oriented when it has 'a broader impact on consumers at large."  *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (2021).  The act of leasing a commercial location to a business obviously does not impact consumers at large.

Additionally, there are no allegations of any deceptive acts by the Real Estate Defendants. The supposed deceptive acts described in the Complaint are:

> Defendants … representing or omitting that (1) Electric Zoo would take place as scheduled on Friday, September 1st, 2nd, 3rd, 2023; (2) Electric Zoo had all the necessary equipment, materials, supplies, suppliers, vendors, labor and personnel to handle all the maintenance, construction, and build out for Electric Zoo's design

and infrastructure like the stages, seating, bathrooms, and concessions, (3) Electric Zoo would pass all inspections and tests done by the City and other agencies or regulators; (4) Electric Zoo would receive all the necessary permits and approvals by government agencies and other authorities to take place as scheduled; (5) Electric Zoo would not be oversold or exceed capacity; (6) Electric Zoo capacity and crown control would not violate, and comply at all times with, New York City fire codes and other capacity and safety rules and regulations applicable to New York concerts or festivals; (7) that everyone with a valid ticket would be able to attend and/or access Electric Zoo; (8) EZNY had oversold their shows beyond permitted capacity; and (9) that events at Avant Gardner had been oversold beyond permitted capacity.

(Dkt. 23 at 144). All the Real Estate Defendants are alleged to have done was purchase the Brooklyn property and lease it to where Avant Gardner has its music venue. Accordingly, there is no allegation that the Real Estate Defendants had anything at all to do with these allegedly deceptive acts.

Rather, all of the alleged deceptive representations or omissions involve the Festival, which has no relation to the Real Estate Defendants, and the sale of tickets to events operated by Avant Gardner LLC, which is simply alleged to be a tenant of the Real Estate Defendants. Accordingly, the N.Y. GBL claims must be dismissed, with prejudice.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint must be dismissed as against all of the Moving Defendants, in its entirety and with prejudice, together with such other and further relief as the Court may deem just and proper.

18

Dated: New York, New York
           August 7, 2024

Respectfully submitted:

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP


*/s/ Richard W. Boone Jr.*
Richard W. Boone Jr.
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com

*Attorneys for Defendants WRE PARENT US
HOLDING CORP. INC., WRE
MANAGEMENT LLC, WRE HOLDING AG,
WIEDERKEHR ASSOCIATES, GARDNER
PURCHASER LLC, STEWART
PURCHASER LLC and PHILIPP
WIEDERKEHR*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.  By registering with the Court's CM/ECF system, each has consented to electronic service via this method.

DATED: This 7th day of August 2024

/s/ Richard W. Boone Jr.
Richard W. Boone Jr.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com

*Attorneys for Defendants WRE PARENT US HOLDING CORP. INC., WRE MANAGEMENT LLC, WRE HOLDING AG, WIEDERKEHR ASSOCIATES, GARDNER PURCHASER LLC, STEWART PURCHASER LLC and PHILIPP WIEDERKEHR*