# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE BROCKMOLE, LAUREN BAIR and NICK ERCKLENTZ, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>  v.<br><br>EZ FESTIVALS LLC, AVANT GARDNER LLC, MADE EVENT LLC, CITYFOX, REYNARD PRODUCTIONS, JURGEN BILDSTEIN, PHILLIP WIEDERKEHR, AGDP HOLDING INC., GARDNER PURCHASER LLC, WIEDERKEHR ASSOCIATES, STEWART PURCHASER LLC, WRE PARENT US HOLDING CORP. INC., WRE MANAGEMENT LLC, WRE HOLDING AG and JOHN DOES NO. 1-10,<br><br>          Defendants. | Civil Action No.: 1:23-cv-08106 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' (WRE PARENT US HOLDING CORP. INC., WRE MANAGEMENT LLC, WRE HOLDING AG, WIEDERKEHR ASSOCIATES,GARDNER PURCHASER LLC, STEWART PURCHASER LLC AND PHILLIP WIEDERKEHR'S) MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

**SQUITIERI & FEARON, LLP**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
lee@sfclasslaw.com

**MOORE LAW, PLLC**
Fletcher Moore
30 Wall Street, 8th Floor
New York, New York 10005
Telephone: (212) 709-8245
fletcher@fmoorelaw.com

*Attorneys For Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES.................................................................................................. iii

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL ALLEGATIONS OF THE RICO SCHEME................................ 2

     A.  Overview................................................................................................ 4

     B.  The Movants Are All Alleged To Be
         Participants In The Racketeering Enterprise.......................................... 5

     C.  Factual Basis Of RICO Elements ........................................................... 5

         1.  The "RICO Elements" ................................................................ 6

         2.  The "Continuity" Elements........................................................ 7

         3.  Predicate Acts............................................................................ 7

             (a)  Money Laundering Predicates ........................................ 7

             (b)  Mail And Wire Fraud Predicate ..................................... 7

ARGUMENT .......................................................................................................... 8

POINT I ................................................................................................................... 8

STANDARDS ON A MOTION TO DISMISS UNDER RULE 12(b)(6) .................... 8

POINT II .................................................................................................................. 8

PLAINTIFFS' SECTION 1962(a) RICO CLAIM ADEQUATELY ALLEGES THE
"ENTERPRISE" AND PREDICATE ACT ELEMENTS.............................................. 8

     A.  The Elements Of A 1962(a) Claim Are
         All Set Forth In Factual Detail In The SACAC ........................................ 8

     B.  Plaintiffs Adequately Allege A Pattern
         "Predicate Acts" Of "Racketeering Business"......................................... 9

     C.  Plaintiffs Have Adequately Plead The Existence
         Of A Group Constituting An "Enterprise" ............................................11

POINT III ...................................................................................................................... 12

PLAINTIFFS' 1962(c) RICO CLAIM CLEARLY ALLEGES DEFENDANTS'
PARTICIPATION IN THE PREDICATE ACTS AND MEETS RULE 9(b)
PARTICULARITY REQUIREMENTS ............................................................................ 12

POINT IV ..................................................................................................................... 12

PLAINTIFFS' 1962(d) CONSPIRACY CLAIMS ADEQUATELY
ALLEGE AN "AGREEMENT" AMONG DEFENDANTS .......................................... 12

POINT V ....................................................................................................................... 13

PLAINTIFFS' RICO 'INJURIES' ARE ADEQUATELY PLEAD ............................. 13

POINT VI ..................................................................................................................... 14

PLAINTIFFS STATE CLAIMS UNDER GBL 349/350 AGAINST MOVANTS ...................... 14

    A.  Plaintiffs Plausibly Allege Affirmative False Or Misleading Conduct ......................... 15

    B.  Plaintiffs Plausibly Allege Actionable Omissions ........................................................ 15

CONCLUSION .............................................................................................................. 16

## **TABLE OF AUTHORITIES**

Page

**Cases**

*AIU Ins. Co. v. Olmecs Med. Supply Inc.*,
 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005) .......................................................................... 11

*Angermeir v. Cohen*,
 14 F. Supp. 3d 134 (S.D.N.Y. 2014) ...................................................................................... 10

*Blue Cross and Blue Shield of New Jersey Inc. v. Philip Morris, Inc.*,
 36 F. Supp. 2d 560 (E.D.N.Y. 1999) ...................................................................................... 14

*Boyle v. United States*,
 556 U.S. 938 (2009) .............................................................................................................. 12

*Bridge v. Phoenix Bond & Indemn.*,
 553 U.S. 639 (2008) ......................................................................................................... 10, 11

*Cohen v. JP Morgan Chase & Co.*,
 498 F.3d 111, 126 (2d Cir. 2007) ......................................................................................... 14

*Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co.*,
 808 F. Supp. 213 (S.D.N.Y. 1992), *aff'd*, 99 F.3d 401 (2d Cir. 1995) ................................... 10

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
 587 F. App'x 663 (2d Cir. 2014) .............................................................................................. 8

*DeSole v. Knoedler Gallery, LLC*,
 974 F. Supp. 2d 274 (S.D.N.Y. 2013) ................................................................................... 12

*Entretelas Americanas S.A. v. Soler*,
 2020 U.S. Dist. LEXIS 20692 (S.D.N.Y. Feb. 3, 2020) ........................................................... 9

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
 385 F.3d 159 (2d Cir. 2004) .................................................................................................... 9

*Guariglia v. Procter & Gamble Co.*,
No. 215CV04307ADSSIL, 2018 WL 1335356 (E.D.N.Y. Mar. 14, 2018) ............................. 15

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2nd Cir. 1990) ........................................................................................ 13

*In re Neurontin Mktg. & Sales Practices Litig.*,
712 F.3d 51 (1st Cir. 2013) ......................................................................................... 14

*In re Sumitomo Copper Litig.*,
995 F. Supp. 451 (S.D.N.Y. 1998) .............................................................................. 11

*In re: Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MC-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ...................... 15

*Irvine v. Kate Spade & Co.*,
No. 16-CV-7300 (JMF), 2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) ...................... 14

*Karlin v. IVF America, Inc.*,
712 N.E.2d 662 (N.Y. 1999) ....................................................................................... 14

*Kommer v. Ford Motor Co.*,
No. 17-cv-029-LEK-DJS, 2018 WL 3727353 (N.D.N.Y. Aug. 6, 2018) ..................... 15

*McCracken v. Verisma Sys., Inc.*,
131 F. Supp. 3d 38 (W.D.N.Y. 2015) .......................................................................... 15

*McLaughlin v. Anderson*,
962 F.2d 187 (2d Cir. 1992) ........................................................................................... 8

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ..................................................................................... 15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1995). ................................................................................................... 15

*Pereira v. United States*,
347 U.S. 1 (1954) ........................................................................................................ 11

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*,
    262 F.3d 260 (4th Cir. 2001).................................................................... 14

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)...................................................... 15

*Salinas v. United States*,
    522 U.S. 52 (1997).................................................................................... 13

*Schlesinger v. Schlesinger*,
    2007 U.S. Dist. LEXIS 104921 (E.D.N.Y. Feb. 8, 2007).......................... 9

*Schmuck v. United States*,
    489 U.S. 705 (1989).................................................................................. 10

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015)................................................................. 13, 14

*Smulley v. Fed. Hous. Fin. Agency*,
    754 F'Appx. 18 (2nd Cir. 2018)............................................................... 12

*Tomassini v. FCA U.S. LLC*,
    No. 3:14-CV-1226 MAD/DEP, 2015 WL 3868343 (N.D.N.Y. June 23, 2015)...................... 16

*United States Fire Ins. Co. v. United Limousine Serv.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)...................................................... 13

*United States v. Coppola*,
    671 F.3d 220 (2d Cir. 2012)....................................................................... 9

*United States v. Greenberg*,
    835 F.3d 295 (2d Cir. 2016)..................................................................... 11

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir. 1989)................................................................... 11

*United States v. Porsico*,
    832 F.2d 705 (2nd Cir. 1987), *cert. denied*, 486 U.S. 2022 (1988) .......... 12

*United States v. Rastelli*,
  870 F.2d 822 (2d 1989) .......................................................................................... 13

*United States v. Turkette*,
  452 U.S. 576 (1981) .............................................................................................. 12

*United States v. Utley*,
  2000 WL 620218 (S.D.N.Y. May 12, 2000) ......................................................... 11

*United States v. Zichettello*,
  208 F.2d 72 (2d Cir. 200) ...................................................................................... 13

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*,
  2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. Sep. 24, 2004) ........................................ 9

*Williams v. Gerber Products, Co.*,
  552 F.3d 934, 938 (9th Cir. 2008) ......................................................................... 14

Plaintiffs Brockmole, Bair and Ercklentz ("Plaintiffs") submit this memorandum of law in opposition to the motion (ECF Nos. 108, 109) by Defendants WRE Parent Us Holding Corp. Inc., WRE Management LLC, WRE Holding AG, Wiederkehr Associates, Gardner Purchaser LLC, Stewart Purchaser LLC And Phillip Wiederkehr ("Wiederkehr Defendants" or "Movants") to dismiss <u>only</u> Counts I, II, III and VII of the Supplemental and Amended Class Action Complaint ("SACAC") (ECF No. 23) pursuant to Rule 12(b)(6).

# I.

# <u>INTRODUCTION</u>

Movants seek dismissal of all RICO claims (Counts I, II and III) on the grounds that the "enterprise" and "racketeering activity" and "injury" elements of 1962(a) are not pled with sufficient particularity. *See* Movants' Brief at 6-13. (ECF No. 109. Movants also seek dismissal of the 1962(c) and 1962(d) claims for failure to state a claim. Movants Br. at 13-16. Movants also argue that the GBL 349/350 Fraud claims (Count VII) should be dismissed.[1] *Id.* at 16-18.

For all the reasons set forth herein, Plaintiffs submit that Movants' motion should be denied in its entirety.

Movants argument is based upon an artificial combing of the SACAC which pretends that the RICO claims <u>only</u> include the Zoo 23 festival. Not so. The SACAC also includes the Brooklyn Mirage and the Zoo 23 after party venues in the RICO claims.

Movants repeatedly argue that the RICO and New York GBL claims should be dismissed against all Movants because Movants ". . . had absolutely nothing at all to do with the 2023 Electric Zoo Festival (the "Festival"). Movants' Br. at 1, 4 (citing the SACAC at 5, 19, 22, 25, 29, 30, 78) "None of the foregoing has anything to do with the festival"); Br. at 9 ("there is no

---

[1] By contrast, other moving defendants have not moved to dismiss the GBL 349/350 claims (Count VII). *See* ECF No. 43.

allegations that [Movants] operated any of the venues . . ." (emphasis supplied), and as to the GBL claims, Br. at 18 (". . . all of the alleged deceptive representations or omissions involve the festival . . .").

The foregoing view of the SACAC by Movants is a gross mischaracterization of the SACAC's RICO and GBL claims against Movants and reveals the weakness of their motion to dismiss.

An actual reading of the SACAC clearly demonstrates the depth and scope of the allegations of Movants involvement and acts of misconduct with respect to the enterprise alleged. *See e.g.*, SACAC ¶¶19-23; 24-26 (identifying the Movants and their respective status and role in the enterprise); SACAC ¶¶6, 72, 77-83 (describing the "enterprise"); SACAC ¶¶91-93 (describing the predicate acts of the movants); and SACAC ¶¶30, 33, 34, 41, 42, 49, 50, 56, 58, 66, 70(a)-(e), 91, 94 (describing the misconduct attributable to each group of defendants to advance the enterprise's illegal objectives).

## II.

## FACTUAL ALLEGATIONS OF THE RICO SCHEME

Movants are part of an interrelated enterprise with entities and persons who own and operate music venues (Brooklyn Mirage), music festivals (Electric Zoo 2023) and the real properties where other enterprise defendants promote, manage, and offer music events to the public. SACAC ¶¶11-18.  Plaintiffs allege that these music venues and events have an established deceptive practice to oversell tickets to shows beyond the venues' respective capacities, thus resulting in ticket buyers' inability to enter venues to see the shows for which they purchased tickets. SACAC ¶¶33, 34, 35, 56.  This illegal practice is well known and documented by attendees.  On social media platform Reddit, attendees to Movants' venues have

repeatedly expressed frustrations like "Crowd Crush Concerns," with one poster stating
Defendants knowingly oversell their venues or events by over 125%:[2]



The latest and most egregious example of this fraudulent business model occurred with
the Electric Zoo 2023 festival. SACAC ¶¶52-58.  Ticket buyers over the Labor Day weekend
festival were cheated out of the benefits of the tickets they bought when the first day of Electric
Zoo 2023 was cancelled at the last minute, the second day was shorter than promoted because of
the Defendants' failure to adequately prepare the venue, and the third day closed its doors to
ticket holders when the site's capacity was exceeded, leaving over 7,000 ticket buyers barred
from access.

The overselling of E Zoo 23 is but a continuation of this group's business practices.
Because tickets to events at Brooklyn Mirage and E Zoo 2023 were sold via mail and the internet
and because false and misleading representations and omissions accompanied the solicitations of
sales of tickets, the fraudulent solicitation and sales process constitute predicate acts of mail and

---

[2] *See* https://www.reddit.com/r/brooklynmirage/comments/1evoyb9/crowd_crush_concerns/ (**Crowd Crush
Concerns – "**Hi everyone! I was just at the BK for Louis the Child's Alter-ego show and it was so oversold that I
was concerned about a crowd crush situation for a minute. It happened around 1:30am (when Troyboi went on in the
Great Hall) in the hallway to the Great Hall where the bathrooms are.  I sent an email to Avant Gardner / BK about it
but given their track record, I doubt any changes will be made.
Just a warning, stay safe out there!").

wire fraud. The transfers of monies earned as a result of activities constituting mail and wire fraud constitute additional predicate acts of money laundering. SACAC ¶¶34, 49, 50, 51, 52, 53.

A.    **Overview**

Plaintiffs allege that all of Defendants operate as an enterprise whose members earn revenues from their collection of (SACAC ¶¶1-6) music events, venues, and music festivals. The SACAC identifies each Defendants role in the enterprise and also the predicate acts with which each is charged. SACAC ¶¶11-26, 72.  As of June 2022, defendant Avant Gardner acquired the Electric Zoo music festival and folded it into the portfolio of the enterprise.  The operations of the enterprise include concert promotion, music events, and dance clubs in New York City. The manner in which the enterprise conducts these operations violates numerous laws including money laundering statutes and mail and wire fraud statutes. SACAC ¶6.  The money laundering and mail and wire fraud activities constitute predicate racketeering acts under RICO. SACAC ¶ 6.  The enterprise conducts its operations through and by fraudulent means including materially false and misleading advertisements, websites, emails, ticket sales, and other communications through which defendants invite Plaintiffs and class members to pay Defendants for admission to events and venues operated by Defendants, (*i.e.* the Zoo Festival and Mirage events) which are oversold beyond their permitted capacity, and/or as to which Defendants fail to provide events as advertised and keep Plaintiffs and class members ticket payments. SACAC ¶65. The activities are continuing and constitute a pattern.

The pattern of racketeering activities has caused Plaintiff and class members to pay monies to Defendants for services and events which they did not receive. SACAC ¶¶64-65.  This has caused monetary injury to Plaintiffs and the class members. *Id*.

### B.    The Movants Are All Alleged To Be
### Participants In The Racketeering Enterprise

The RICO enterprise is described in detail and includes three categories of entities (*i.e.*

"Music Event Defendants," [3] "Real Estate Defendants" and "Investor Defendants") and

individuals "associated in fact" by virtue of cross ownership and involvement in each other's

business. SACAC ¶¶4, 5, 12, 13, 14, 15, 30, 31, 33, 34, 35, 37, 49, 72-73.

The enterprise has generally been structured to operate as a unit in order to accomplish

the goals of their criminal scheme.  The "Music Event Defendants" planned, promoted,

controlled and executed the operations of EZNY 23 and Avant Gardner.  The "Real Estate

Defendants" knowingly and willingly allowed their real property to be used to fraudulently

promote and operate events.  The "Investor Defendants" financed the operations of the enterprise

and shared in the revenues generated by other Defendants' racketeering activities. SACAC ¶¶73,

78.

### C.    Factual Basis Of RICO Elements

The RICO Defendants and their co-conspirators constitute an association-in-fact

enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), referred to hereinafter as the

"Enterprise." SACAC ¶67.  Each of the RICO Defendants participated in the operation or

---

[3]    **The "Music Event Defendants"**

Defendant Avant Gardner, LLC ("Avant Gardner") is an owner, operator, organizer, promoter of Electric Zoo Music Festival and, *inter alia*, "The Kings Hall" and "The Brooklyn Mirage," the outdoor summer season portion of Avant Gardner. (SACAC ¶11). According to NYPD Chief of Patrol John Schell, Defendants Avant Gardner and Bildstein were the operators of EZNY 23. SACAC ¶13.

Defendant Made Event LLC ("ME, LLC") is a Foreign Limited Liability Company formed in May 2022 just as the Zoo Festival was acquired by Avant Gardner and is an owner, operator, organizer, promoter of Electric Zoo Music Festival. SACAC ¶14. Defendant EZ Festivals LLC ("EZ Festivals") is an owner, operator, organizer, and promoter of Electric Zoo Music Festival. *Id*. Defendant Jurgen Bildstein ("JB") is a natural person residing in New York who owns and/or controls Defendants Avant Gardner, ME LLC and EZ Festivals. Bildstein's company Reynard Productions produced EZNY 23. SACAC¶¶13, 18, 19, 30.

management of the Enterprise. SACAC ¶¶11-26; 30. At all relevant times, the Enterprise was engaged in, and its activities affected interstate commerce within the meaning of 18 U.S.C. § 1962(c). The ultimate objective of the RICO Defendants' scheme or artifice to defraud was to cause plaintiffs and the class to spend as much money as possible at defendant's venues and events to the direct benefit of the individual and entity RICO defendants. In furtherance of their scheme, and as described herein, the RICO Defendants engaged in the following activities through fraudulent means:

      a.     emails and website postings incorporating false and misleading statements, (SACAC 70(a));

      b.     wirings and/or mailings between and among the RICO Defendants, (SACAC 70(b));

      c.     communications directed toward New York City and state officials and regulators incorporating false and misleading statements regarding Avant Gardner's operations, (SACAC ¶70(c));

      d.     funds transferred between/among investors in Avant Gardner to the RICO Defendants, with the intent that those funds be used to promote the carrying on of the RICO Defendants' criminal activities, (SACAC ¶70(d)); and

      e.     electronic transactions of tickets to events and receipt of funds for financing RICO defendants' illegal activities. SACAC ¶70(e).

### 1.    <u>The "RICO" Elements</u>

The RICO Defendants patterns of fraudulently overselling tickets to events are alleged in detail SACAC ¶¶1, 2, 3, 30, 33, 50. The SACAC alleges the enterprise has engaged in multiple predicate acts since 2018. SACAC ¶¶90-96.

### 2. The "Continuity" Element

The related predicate acts were committed over a substantial period of time from at least 2018 at the Mirage venue through The EZ 23 festival and/or by its nature continues into the future and threatens to be repeated. Overselling events has become a regular way of doing business at Defendants' venues and events. SACAC ¶¶2, 33, 50. "Continuity" is a foregone conclusion in light of Movants continued role in the music event business.

### 3. Predicate Acts

#### (a) Money Laundering Predicates

"Money Laundering" constituting predicate RICO acts include, *inter alia*, a prohibition on depositing or spending more than $10,000 of the proceeds from a predicate offense (18 U.S.C. § 1957) and outlaws financial transactions involving the proceeds of other predicate offenses. (18 U.S.C. § 1951). The Movant Investment Defendants, upon information and belief, have received from the Music Event Defendants and/or the Movant Real Estate Defendants, and continue to receive, deposit and spend more than $10,000 of proceeds generated from acts of mail and wire fraud through the sale of tickets to Plaintiffs and class members even though the legal capacity of the venues was for lower than the number of tickets sold. SACAC ¶¶70, 72(c), 74, 91-93.

#### (b) Mail And Wire Fraud Predicate

The particular uses of wire and mail communications in furtherance of the RICO Defendants' scheme or artifice to defraud that constitute violations of 18 U.S.C. §§ 1341 and 1443, including which individual defendant caused the communication to be mailed or wired, when the communication was made, and how it furthered the fraudulent scheme are described herein. SACAC ¶¶33, 50, 51, 70, 94-97. The enterprise engaged in conduct constituting mail

and wire fraud by using the internet to transmit materially false and misleading promotions

soliciting customers for EZNY 23, the "after-parties" and events at Avant Gardner to buy tickets

well beyond the legally permitted capacity.  The enterprise engaged in further instances of wire

fraud via its promotion of EZNY 23 by misrepresenting material aspects of the show and using

false representations about EZNY 23 to solicit sales of after party tickets to Avant Gardner in

connection with EZNY 23. SACAC ¶¶50-51.

## ARGUMENT

### POINT I

### STANDARDS ON A MOTION TO DISMISS UNDER RULE 12(b)(6)

On a motion to dismiss a RICO claim, the Court must accept the factual allegations as

true and draw all in reasonable inferences in Plaintiffs' favor. *McLaughlin v. Anderson*, 962 F.2d

187, 189 (2d Cir. 1992). Where predicate acts sound in fraud, Rule 9(b) applies for non-fraud

predicate acts the Rule 8 standard applies. *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x

663,666 (2d Cir. 2014).

### POINT II

### PLAINTIFFS' SECTION 1962(a) RICO CLAIM ADEQUATELY ALLEGES THE "ENTERPRISE" AND PREDICATE ACT ELEMENTS

**A.    The Elements Of A 1962(a) Claim Are All Set
       Forth In Factual Detail In The SCAC**

A 1962(a) RICO claim is essentially a claim that makes investments of income from

racketeering acts into other distinct activities and investments actionable under RICO where a

plaintiff is injured by means other than the racketeering activity which generated the racketeering

income. The SACAC set forth factual allegations of the investment and reinvestment of the

enterprise members into other different activities and investments. *See* SACAC ¶¶30, 33, 34, 41, 42, 49, 50, 56, 58, 66, 70(a)-(e), 91, 94.

**B.    Plaintiffs Adequately Allege A Pattern
"Predicate Acts" Of "Racketeering Business"**

Movants contend that Plaintiffs' pleading of predicate act of mail and wire fraud are not specific enough. Br. at 10-12.  They make the same argument with respect to the "money laundry" predicate act. *Id*. Movants argue that the SACAC "fails to sufficiently allege how those alleged operational practices [alleged at ¶¶33-34] were criminally illegal or what or how any alleged illegal proceeds were invested into the 2023 Zoo Festival."  Their "money laundry" argument cites only to paragraph 92 of the SACAC's money laundry allegations. *Id*. at 11.  As to their arguments for the elements of mail and wire fraud, Movants cite only ¶85 (Br. at page 12).

The SACAC has detailed allegations of the predicate acts, by whom they were committed, and how and they are related. SACAC 11-26, 30, 91-96. *See United States v. Coppola*, 671 F.3d 220, 243 (2d Cir. 2012) (pattern element is "fairly flexible").

Defendants' mail wire fraud Rule 9b pleading deficiency argument is also unpersuasive. Defendants cite ¶¶95-96 and contend that there are not enough allegations of Defendants knowledge or the circumstances of the fraud.  In support of the money laundering attack (Movants' Br. at 10-11), Movants cite *Schlesinger v. Schlesinger*, 2007 U.S. Dist. LEXIS 104921 at *22 (E.D.N.Y. Feb. 8, 2007); *Entretelas Americanas S.A. v. Soler*, 2020 U.S. Dist. LEXIS 20692 at *22-23 (S.D.N.Y. Feb. 3, 2020); *West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, 2004 U.S. Dist. LEXIS 19501 at *31 (S.D.N.Y. Sep. 24, 2004).  As for the attack on the mail and wire fraud allegations, Movants cite *First Capital Asset Management, Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir. 2004); and *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999).  Although "Federal Rule of Civil Procedure 9(b) . . . applies to RICO

claims for which fraud is the predicate illegal act," *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999), "matters peculiarly within a defendant's knowledge may be pled on information and belief." *First Cap. Asset Mgmt.*, 385 F.3d at 179 (internal quotation marks omitted). And in "cases where plaintiffs allege that the mails or wires were simply used in furtherance of a master plan to defraud," courts have held that "particularity as to the mailings themselves is unnecessary," since "[o]nce the plaintiff alleges with particularity the circumstances constituting the fraudulent scheme, neither the reputational interests nor the notice function served by Rule 9(b) would be advanced in any material way by insisting that a complaint contain a list of letters or telephone calls." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 146 (S.D.N.Y. 2014) (internal quotation marks omitted). Here, those allegations that must be pleaded with particularity are, indeed, more than sufficiently pleaded to survive dismissal. The Movants' arguments to the contrary are unpersuasive. Enough details of the pertinent who, what, where, when, how and why details are pleaded to meet 9(b) requirements. Reliance is not an element of a mail fraud RICO claim. *Bridge v. Phoenix Bond & Indemn.*, 553 U.S. 639, 649 (2008).

Furthermore, the Supreme Court has held clearly that, to satisfy the mail fraud statute, the mailings themselves need not actually contain false statements—so long as they further an underlying scheme that itself has a fraudulent purpose. *See Schmuck v. United States*, 489 U.S. 705, 715 (1989). In other words, even "innocent" mailings may "satisfy the mailing element under the mail fraud statute where the mailing is part of the execution of the scheme." *Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co.*, 808 F. Supp. 213, 228 (S.D.N.Y. 1992), *aff'd*, 99 F.3d 401 (2d Cir. 1995). And the mailings need not be an essential part of the fraudulent scheme; rather, they must be an "incident to an essential part of the scheme." *Pereira v. United States*, 347 U.S.

1, 8 (1954). The same principles apply to the wire fraud statute. *See, e.g., United States v. Utley*, 2000 WL 620218, at *1 (S.D.N.Y. May 12, 2000).  In short, "[i]n cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves," and "a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications[ ] is sufficient  to satisfy Rule 9(b)." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998).

To the extent Movants suggest that wire and mail fraud require intent that is not the law. Nothing in the relevant statutes "suggests that the scheme to defraud must involve the deception of the same person or entity whose money or property is the object of the scheme." *United States v. Greenberg*, 835 F.3d 295, 305-06 (2d Cir. 2016).  And "a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649-50 (2008).

## C.    Plaintiffs Have Adequately Pled The Existence Of A Group Constituting An "Enterprise"

A RICO "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), while a RICO "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated with fact although not a legal entity," 18 U.S.C. § 1961(4). "The Second Circuit has construed 'enterprise' liberally . . ." *AIU Ins. Co. v. Olmecs Med. Supply Inc.*, 2005 WL 3710370 at *6 (E.D.N.Y. Feb. 22, 2005) quoting *United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989).

Movants contend that the "enterprise" element is not adequately pleaded because there are no specific allegations of acts "which would even suggest that they and the other Defendants

engaged in anything remotely resembling a common enterprise." Movants Br. at ¶¶9-10, citing to

SACAC ¶¶77 and 109. But the United States Supreme Court in *Boyle v. United* States, 556 U.S.

938, 994 (2009) noted that "enterprise" is "obviously broad" and held "enterprise" requires only

"a purpose" relationship among those associated with the "enterprise" and "longevity." *Id*. at

946.  Movants ignore the allegations delineating the separate roles of each group of RICO

defendants. *See* SACAC ¶¶11-26.  Furthermore, other than to cite *United States v. Turkette*, 452

U.S. 576, 583 (1981) for general definitions, Movants cite no legal authority to establish <u>any</u>

deficiencies in pleading of "enterprise." This Court has noted the "low threshold" for pleading

"enterprise." *DeSole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 300 (S.D.N.Y. 2013).

### POINT III

**PLAINTIFFS' 1962(c) RICO CLAIM CLEARLY ALLEGES DEFENDANTS
PARTICIPATION IN THE PREDICATE ACTS AND
<u>MEETS RULE 9(b) PARTICULARITY REQUIREMENTS</u>**

Defendants contend that the 1962(c) claim must be dismissed for the same reasons that

purportedly justifying dismissal of the 1962(a) claims. Br. at 14. Movants argue ". . . there are

simply no allegations regarding any acts by the Moving Defendants in furtherance of the alleged

conspiracy." *Id*. at 14.  Movants fail to address any specific allegations and cite only general

propositions of 1962(c) law from *Smulley v. Fed. Hous. Fin. Agency*, 754 F'Appx. 18, 22 (2nd

Cir. 2018) and *United States v. Porsico*, 832 F.2d 705, 714 (2nd Cir. 1987), *cert. denied*, 486 U.S.

2022 (1988) and *DeFalco*, 244 F.3d at 306.

### POINT IV

**PLAINTIFFS' 1962(d) CONSPIRACY CLAIMS
<u>ADEQUATELY ALLEGE AN "AGREEMENT" AMONG DEFENDANTS</u>**

Defendants contend that the conspiracy allegations of the 1962(d) claims are deficient

because they are "conclusory" as to any "agreement." Br. at 14. But agreements can be inferred

from conduct and general knowledge. *See United States v. Zichettello*, 208 F.2d 72, 99 (2d Cir. 200) quoting *United States v. Rastelli*, 870 F.2d 822, 828 (2d 1989) participants liable for the conspiracy because "they know the general nature of the conspiracy and the conspiracy extends beyond their individual roles."

At this stage, Plaintiffs pleading of agreements among the interrelated parties must be taken as true and the lack of detail is not fatal. Rule 9(b) does not apply to RICO conspiracy charges. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2nd Cir. 1990). The "agreement" element of 1962 (d) based on a 1962(c) violation does not require the pleading of an agreement to operate or manage the enterprise. *Salinas v. United States*, 522 U.S. 52, 63 (1997) (holding that a "conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense").

## POINT V

## PLAINTIFFS' RICO "INJURIES" ARE ADEQUATELY PLEADED

Movants argue that "plaintiffs have not plausibly alleged how they were injured by the Moving Defendants investing the proceeds of that racketeering activity." Br. at 12-13. The argument is pure rhetoric inasmuch as none of the SACAC allegations are cited, quoted, or even mentioned. *Id*. Moving Defendants' two legal citations, *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp 3d at 127 and *United States Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 449 (S.D.N.Y. 2004), offer no support as Plaintiffs' injuries are axiomatic—the price of the tickets.

The Second Circuit has made clear that all that a RICO plaintiff must show is "that the defendant's conduct caused an actual, quantifiable injury." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 94 (2d Cir. 2015) (internal quotation

marks and emphasis omitted; emphasis added). Here, Plaintiffs have alleged cognizable injuries under RICO to themselves, *i.e.*, the price of the tickets. Those injuries are plainly quantifiable—and that is all that is required at the pleading stage. *See generally, Blue Cross and Blue Shield of New Jersey Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 569 (E.D.N.Y. 1999) ([the] Supreme Court has greatly reduced "the need for plaintiffs to allege injury").

The only relevant question at this stage is whether the racketeering activity "caused [the plaintiff] to suffer an injury," and not whether the plaintiff can identify "the precise number" of its damages. *Sergeants Benevolent*, 806 F.3d at 95. In other words, "[q]uantifying the damages caused by defendants' alleged fraud belongs to the damages phase of [the plaintiff's] RICO case," *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 51, 58 (1st Cir. 2013), and RICO only requires alleging "some damages, not a specific amount." *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001).

## POINT VI

## PLAINTIFFS STATE CLAIMS UNDER GBL 349/350 AGAINST MOVANTS

Under NYGBL § 349 or § 350, a defendant must have engaged in (1) "consumer-oriented" conduct that is (2) materially misleading and (3) causes injury to the plaintiff. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012). Justifiable reliance is not required (*id.* at 941-42), and "Rule 9(b) plainly does not apply[.]" *Irvine v. Kate Spade & Co.*, No. 16-CV-7300 (JMF), 2017 WL 4326538, at *2 (S.D.N.Y. Sept. 28, 2017).[4] Claims under the UCL and FAL are also governed by a "reasonable consumer" standard. *Williams v. Gerber Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A plaintiff must allege "a probability 'that a significant portion of the

---

[4] The standards for NY GBL §§ 349 and 350 are "substantively identical" except GBL § 350 applies to false advertising. *See Weisblum v. Prophase Labs, Inc*., 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (Furman, J.). Under NYGBL § 350-a (1), the term "false advertising" means advertising, including labeling, of a commodity[.]"

general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020).

### A.    Plaintiffs Plausibly Allege Affirmative False or Misleading Conduct

Plaintiffs allege affirmative misleading misconduct by Movants. Under NYBGL 349-50, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). "[W]hether a particular act or practice is deceptive is usually a question of fact." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013).

### B.    Plaintiffs Plausibly Allege Actionable Omissions

Under the NYGBL, omissions are actionable "where the business alone possesses material information that is relevant to the consumer and fails to provide this information[,]" *Oswego*, 85 N.Y.2d at 26, or "when the Defendant actively conceals a material fact from the Plaintiff." *Guariglia v. Procter & Gamble Co.*, No. 215CV04307ADSSIL, 2018 WL 1335356, at *9 (E.D.N.Y. Mar. 14, 2018).

*Kommer v. Ford Motor Co.*, No. 17-cv-029-LEK-DJS, 2018 WL 3727353, at *3 (N.D.N.Y. Aug. 6, 2018) ("[C]laims brought pursuant to §§ 349 and 350 . . . need only meet the bare-bones notice-pleading requirements of Rule 8(a)."); *McCracken v. Verisma Sys., Inc.*, 131 F. Supp. 3d 38, 46 (W.D.N.Y. 2015) ("Deceptive conduct that does not rise to the level of actionable fraud, may nevertheless form the basis of a claim under [NYGBL], which . . . relaxes the heightened standards required for a fraud claim.").

Courts deny motions to dismiss based on direct and circumstantial allegations of knowledge like those alleged by Plaintiffs. *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *20 (S.D.N.Y. July 15, 2016) ("New GM may have

known, via knowledge imputed from Old GM employees and documents, about the ignition defects by at least spring 2010, when the first California Plaintiff purchased his car."); *Tomassini v. FCA U.S. LLC*, No. 3:14-CV-1226 MAD/DEP, 2015 WL 3868343, at *7 (N.D.N.Y. June 23, 2015) ("[T]he fact that nearly one hundred and thirty consumers filed complaints . . . and . . . Transport Canada opening an investigation . . . constitute additional circumstantial evidence of Defendant's knowledge.")

## **CONCLUSION**

For all the foregoing reasons, Movants' request for dismissal should be denied.

Dated: September 10, 2024    SQUITIERI & FEARON


By:*/s/ Lee Squitieri*
    Lee Squitieri
305 Broadway
7th Floor
New York, New York 10007
(212) 421-6492

MOORE LAW PLLC
Fletcher Moore
30 Wall Street, 8th Floor
New York, New York 10005
(212) 709-8245

*Attorneys for Plaintiffs*